[Civ. No. 12159.   First Dist., Div. One.   Mar. 1, 1943.]

VERTEX INVESTMENT COMPANY (a Corporation), Appellant, v. NORMA B. SCHWABACHER, Individually and as Executrix, etc., Respondent.

Philip S. Ehrlich, Albert A. Axelrod and Julien R. Bauer for Appellant.

Brobeck, Phleger & Harrison, Maurice E. Harrison and Moses Lasky for Respondent.

WARD, J.—Plaintiff appeals from a judgment entered after demurrer sustained to the amended complaint without leave to amend. The gravamen of the action is that Louis A. Schwabacher, while a director and officer of plaintiff, Vertex Investment Company, embezzled, misappropriated and converted cash and property of plaintiff to his own use. The defendant, Norma B. Schwabacher, was sued individually and as executrix of the last will of Louis A. Schwabacher. Norma Schwabacher is the widow of Louis Schwabacher and legatee and devisee of his entire estate except as to some small specific bequests. The decree of final distribution has been entered in the estate proceeding. Samuel Schwabacher, brother of Louis, was co-executor of his will, and in that capacity was named as a defendant. The disposition of the action as to him does not appear from the record herein. This appeal involves only the demurrer of Norma Schwabacher individually and as executrix of the will of Louis.

Plaintiff prays that an accounting of the alleged misappropriations be had, that it have judgment for the amount found due and that a trust in its favor be impressed on all moneys and properties received by Norma from the estate of Louis, and on the proceeds of policies of insurance on the life of Louis received by Norma Schwabacher.

The grounds of demurrer are that the complaint does not state a cause of action; that it is barred by the statute of limitations, subdivision 4 of sec. 338, Code of Civil Procedure, and sec. 353, Code of Civil Procedure, and by laches; that plaintiff is estopped by the decree of distribution to maintain the action; that several causes of action have been united, but not separately stated, and that several causes of action have been improperly united.

The demurrer to the amended complaint was first overruled on February 19, 1941, but on April 10, 1941, the order

was vacated and the demurrer was sustained without leave to amend. Judgment was entered for defendant on the following day.

■ Plaintiff contends that even though the order sustaining the demurrer would have been proper had it been the original decision of the court, the judge was without jurisdiction in the circumstances here to change his first ruling. The order overruling the demurrer was made on February 19, 1941. On March 3, 1941, counsel for defendant wrote a letter to the judge making a "request that the previous order overruling our demurrer be vacated and the matter reopened for further consideration." The letter called the court's attention to a decision in another state, which had appeared in the reports after the argument and filing of briefs in this case. Counsel urged that this decision was strong authority in defendant's favor. A copy of the letter was sent to plaintiff's counsel. On March 6, 1941, counsel for the plaintiff wrote a letter to the judge in answer to defendant's letter. Counsel for each side thereafter wrote two further letters to the judge, sending copies to opposing counsel. The last letter was written by plaintiff's counsel on March 14, 1941. On April 10, 1941, the judge made the order sustaining the demurrer without leave to amend and rendered judgment on the following day. No motion for reconsideration was made in open court and no formal notice of motion given.

Plaintiff contends that the court was without jurisdiction to change its ruling except pursuant to a motion made in court, and that it was required that notice of motion be given or waived. Plaintiff further contends that after the order overruling the demurrer had been made by the judge of the law and motion department, the case automatically passed to the jurisdiction of the presiding judge by force of the court rules, and the order changing the ruling on demurrer was beyond the jurisdiction of the judge of the law and motion department unless reassigned by the presiding judge, which was not done here. It is further contended that since the judge who made the original ruling ceased to be the judge of the law and motion department on March 31, 1941, he was without right on April 10, 1941, to make the order sustaining the demurrer, such matters being within the sole jurisdiction of the law and motion judge.

We are of the view that the judge who originally ruled upon the demurrer had jurisdiction to change his decision by reason of the fact that it was he who originally ruled on the demurrer, even though at the time of the changed ruling he was no longer judge of the law and motion department. A ruling on demurrer, unlike many other types of judicial determinations, may be changed for no other reason than that the judge is of the view that his first ruling was erroneous. (*De La Beckwith* v. *Superior Court,* 146 Cal. 496 [80 P. 717]; *Kelly* v. *Liddicoat,* 35 Cal.App.2d 559 [96 P.2d 186]; *Howe* v. *Board of Supervisors,* 118 Cal.App. 306 [5 P.2d 28]; 21 Cal.Jur. 124.) Proceedings had in court, pursuant to notice given or waived, when the demurrer was first argued are the basis for the changed ruling as for the original decision, and an additional motion and notice are not required.

In the case herein the record does not show that the right of the judge who made the original ruling had ceased by reason of further proceedings had in the case before another judge of the court. The point raised by plaintiff is without merit.

■ In determining the applicability of the statute of limitations herein, two distinct periods may be considered; that, from the date of the organization of the corporation to the date of the death of Louis A. Schwabacher (about twenty-four years); and that from his death to the filing of the complaint (approximately five years). If the statute of limitations is applicable to either period, the demurrer to the amended complaint should be sustained. We will proceed to consider the demurrer as directed to the statute of limitations for the first, twenty-four year, period.

The complaint alleges that Louis A. Schwabacher died on or about the 1st day of August, 1935; that his wife Norma and Samuel Schwabacher, a brother, who were named in his will as such, qualified and were appointed as executors of his last will and testament; that Sarah Schwabacher, whose husband predeceased her, was the mother of Louis A., Samuel I. and Edgar B. Schwabacher, Mina A. Eckstein and Jennie S. Rosenbaum; that in the year 1911 plaintiff corporation was formed, the mother transferring to it certain stocks, bonds and other securities, which at that time constituted its sole assets; that the corporation issued 5,000 shares of

capital stock equally to her five children, from whom officers and directors were selected; that Louis, as president, treasurer and general manager "exclusively controlled, dominated, directed and managed the properties, business and affairs of plaintiff, and at no time or at all consulted with or received any advice from the other directors, officers, or stockholders of said plaintiff, and in all respects said Louis A. Schwabacher managed and controlled said properties, business and affairs of plaintiff corporation as though the same were his individual properties, business and affairs"; that his brothers and sisters "looked upon said Louis A. Schwabacher as the head of their family; that said Sarah Schwabacher was 64 years of age in the year 1911; and had the greatest love and affection for said Louis A. Schwabacher and the greatest respect for the integrity, honesty, character and business ability of said Louis A. Schwabacher; that said Louis A. Schwabacher was very prominent in business affairs, being a director of several large corporations and being experienced in the management of corporate and business affairs; . . . that sometime after the organization of the plaintiff corporation said Samuel I. Schwabacher objected to the manner in which said Louis A. Schwabacher handled some routine matters for the plaintiff corporation; that said Sarah Schwabacher informed said Samuel I. Schwabacher that if he objected to the manner in which said Louis A. Schwabacher managed the business and affairs of the plaintiff corporation, or if said Samuel I. Schwabacher opposed said Louis A. Schwabacher in the management of the business and affairs of the plaintiff corporation she, said Sarah Schwabacher, would disinherit said Samuel I. Schwabacher; that said Samuel I. Schwabacher thereupon withdrew said objections and agreed to abide by the wishes of his mother. That . . . very close family ties and relations existed between said Louis A. Schwabacher and his brothers and sisters, the other stockholders and directors of the plaintiff corporation; that all of said stockholders and directors had full and complete confidence in the honesty, integrity and ability of Louis A. Schwabacher and relied implicitly upon him in the management and direction of the business and affairs of the plaintiff corporation. . . . That from time to time said Louis A. Schwabacher, without consulting the other directors or stockholders of plaintiff corpo-

ration, caused dividends to be paid to the stockholders of plaintiff corporation from the assets of plaintiff corporation; that from the date of the organization of the plaintiff corporation to the date of the death of said Louis A. Schwabacher the stockholders of the plaintiff corporation never held any meetings whatever; that though the minute book of plaintiff corporation records directors' meetings of the plaintiff corporation purportedly held from time to time up to the date of Louis A. Schwabacher's death, none of the other stockholders or directors of the plaintiff corporation had notice or knowledge thereof and never attended any such meetings; that said minutes were dictated or drafted by said Louis A. Schwabacher and none of said meetings were ever actually held. . . . That at no time during the period hereinabove mentioned did Louis A. Schwabacher establish or cause to be established on behalf of plaintiff corporation any bank account or depositary for its funds, and said plaintiff corporation at no time during the lifetime of said Louis A. Schwabacher had any bank account or depositary for its funds; that during all of said period of time said Louis A. Schwabacher either deposited said funds of plaintiff corporation in his personal bank account or otherwise commingled said funds of plaintiff corporation with his own personal funds; that during said period of time said Louis A. Schwabacher disbursed from said commingled funds such funds as he purportedly disbursed on behalf of plaintiff, and also such funds as he disbursed for his own use and benefit. . . . That plaintiff is further informed and believes, and upon such information and belief alleges, that various purchases purportedly made by said Louis A. Schwabacher for and on behalf of the plaintiff corporation resulted in the realization of profits therefrom; that such purchases purportedly made for and on behalf of the plaintiff which resulted in profits were transferred by the said Louis A. Schwabacher from the plaintiff corporation to said Louis A. Schwabacher at the actual cost thereof to plaintiff corporation, and the profits resulting therefrom were converted by said Louis A. Schwabacher to his own use and benefit.'' It is also alleged upon information and belief that the purported purchases resulted in losses which were ''transferred from the said Louis A. Schwabacher to the plaintiff at the actual cost thereof to the said Louis A. Schwabacher,

and the losses resulting therefrom were charged by Louis A. Schwabacher to plaintiff corporation.''

Upon the foregoing allegations based upon information and belief it is alleged ''that plaintiff is informed and believes, and based upon such information and belief alleges that said books of account did not contain true and correct entries of all the financial and business transactions between plaintiff corporation and said Louis A. Schwabacher; that plaintiff is further informed and believes, and upon such information and belief alleges that said books of account merely contained a transcription of certain entries contained in the personal books of account of said Louis A. Schwabacher, and marked therein 'Vertex Investment Company' . . . That during all of the times herein mentioned the said Louis A. Schwabacher had misappropriated, embezzled and converted to his own use and benefit large sums of money and properties of great value belonging to the plaintiff corporation, the exact amount and character of which said money and properties are unknown to plaintiff at the present time. . . . That plaintiff is further informed and believes, and based upon such information and belief alleges that at the time of the death of Louis A. Schwabacher, there was included among the alleged assets of his estate, cash and properties, which cash and properties were actually the property of the plaintiff corporation, and which said cash resulted from the aforesaid misappropriation, embezzlement and conversion, and which properties had been purchased with the funds of the plaintiff corporation . . . That plaintiff is informed and believes, and based upon such information and belief alleges that said Louis A. Schwabacher, during his lifetime, purchased various forms of policies of life insurance, and that the defendant, Norma B. Schwabacher was named as sole beneficiary of all said policies of life insurance, other than those in which the estate of Louis A. Schwabacher was named as beneficiary; that plaintiff is further informed and believes, and based upon such information and belief alleges that the premiums upon all of said policies of life insurance, so paid by Louis A. Schwabacher or on his behalf, were paid for with the funds of plaintiff corporation, or with funds of plaintiff corporation which had been commingled with the personal funds of said Louis A. Schwabacher, as hereinabove alleged . . . That said Louis A.

Schwabacher at no time or at all advised any of the stockholders, directors or officers of plaintiff corporation of the matters and things hereinabove alleged; that at no time or at all did said Louis A. Schwabacher furnish a financial statement of the plaintiff corporation to the stockholders of said plaintiff, nor did he cause such a financial statement to be prepared for submission to the stockholders or directors of said plaintiff, nor did the stockholders or directors of said plaintiff ever see a financial statement of said plaintiff, except as hereinafter alleged; that none of the stockholders or directors of said plaintiff, other than Louis A. Schwabacher, ever saw or were permitted by said Louis A. Schwabacher to see the purported books of account of said plaintiff, nor the personal books of account of said Louis A. Schwabacher; that none of the stockholders, directors or officers of said plaintiff had any knowledge of the financial and business transactions between said plaintiff and said Louis A. Schwabacher, as hereinabove set forth until subsequent to the death of said Louis A. Schwabacher, and then only under the circumstances hereinafter alleged; that none of the stockholders, directors or officers of said plaintiff ever consented to or approved of the financial and business transactions between said plaintiff and said Louis A. Schwabacher, nor consented to or approved of the manner in which said Louis A. Schwabacher directed and managed the business and affairs of said plaintiff, as hereinabove set forth; that by reason of the matters and things herein set forth and the confidential and family relations existing between said Louis A. Schwabacher and the other stockholders and directors of said plaintiff, and the trust and reliance placed by them in said Louis A. Schwabacher, as hereinabove alleged, the said stockholders and directors of said plaintiff at no time suspected or had any cause to suspect any of the matters or things herein alleged.''

Under the terms of the will, except for certain specific bequests, the entire estate was devised to Norma B. Schwabacher, the widow of Louis, and under a decree of distribution the estate was distributed to her. The complaint herein was filed in May 1940 subsequent to the final distribution in the estate of Louis. The date of the final discovery of the fraud is placed as of September 1937.

In addition to the allegations outlined or quoted herein,

the complaint further alleges certain matters subsequent to the death of Louis.

■ When failure to discover fraud is due to lack of diligence, the statute of limitations commences to run from the time it should have been discovered.

A cause of action for fraud is "not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud." (Sec. 338, subd. 4, Code Civ. Proc.) ■ But it is not sufficient for the complaint merely to allege discovery within the three-year period for actions for relief on the ground of fraud. "Discovery," within the meaning of the section, is deemed to take place when the plaintiff in the exercise of due diligence should have learned the facts. Hence it must affirmatively appear that the failure to make discovery was not due to lack of diligence. The plaintiff should set forth the circumstances under which he learned the facts, and the reasons for failing to learn them sooner in order that the court may determine whether he has been negligent in not acquiring knowledge of them at an earlier date. (*Consolidated R. & P. Co.* v. *Scarborough,* 216 Cal. 698 [16 P.2d 268]; *Victor Oil Co.* v. *Drum,* 184 Cal. 226 [193 P. 243]; *Lady Washington C. Co.* v. *Wood,* 113 Cal. 482 [45 P. 809]; *West* v. *Great Western Power Co.,* 36 Cal. App.2d 403 [97 P.2d 1014].) The rule is often expressed in the statement that where plaintiff knows facts which place him under a duty of inquiry, he is charged with knowledge of such facts as an investigation would have revealed. It has also been said that the means of knowledge are the equivalent of knowledge, but this is subject to the qualification that the position of plaintiff must be such that he is under a duty to make use of such means. (*Prewitt* v. *Sunnymead Orchard Co.,* 189 Cal. 723 [209 P. 995].)

■ In considering the question whether there was a lack of diligence in failing to discover the facts before the death of Louis, we are of the view that upon the facts alleged it is immaterial whether all, or less than all, were originally elected directors. That is, it is not necessary here to determine whether, if the facts were such as to impose a duty of investigation on directors, but not on persons who were stockholders only, the constructive notice of the directors would be imputed to the corporation to bar an action by it for the

benefit of all stockholders. (*Curtis, Receiver,* v. *Connly,* 257 U.S. 260 [42 S.Ct. 100, 66 L.Ed. 222]; *Whitten* v. *Dabney,* 171 Cal. 621 [154 P. 312].)

It is alleged that from time to time Louis caused dividends to be paid without consulting the other directors, and that plaintiff at no time had any bank account or depositary for its funds. It is further alleged that Louis either deposited funds of plaintiff in his personal bank account or otherwise commingled funds of plaintiff with funds of his own and those of his mother. The conclusion to be drawn from these allegations, in the analysis of defendant, is that the dividends were paid by personal check of Louis. We are of the view that this deduction is a proper one. To have paid dividends in currency would have been such a departure from common business practice that it will not be inferred that they were thus paid in the absence of an allegation to that effect. But it does not follow from the fact that corporate funds were deposited in a bank account in the name of Louis that he also deposited his personal funds in the same account.

To summarize the charge of lack of diligence on the part of the stockholders during the lifetime of Louis, it is that they permitted him to have exclusive management of the corporation without calling him to account for his management. During this period they received no financial statements and never saw the books of the corporation. It is not averred that they ever made any request for such statements, nor that they ever asked to see the corporate books or to have them audited. If they had requested a financial report, an honest statement by Louis should have revealed his indebtedness, if any, to the company. They may not have been in a position themselves to analyze the corporate books kept by Louis, but a professional audit if they had asked for one, would have revealed Louis' indebtedness to the company. If a request for a statement or audit had been made, a failure on the part of Louis to comply would arouse a strong suspicion of irregularity.

If Louis were alive he could not rely on the other directors having abrogated their functions in his favor to defeat liability, since it was with the consent of all. Their lack of diligence, if any, consists in their failing to call Louis to account for his exclusive management over a long period of years.

An inference may be drawn from the complaint that the action was not commenced earlier because of the reluctance of the stockholders to distress their mother who was living during the greater period between the organization of the corporation and the filing of the complaint. It is sufficient to say that the complaint was filed prior to the death of the mother and approximately five years after the death of Louis. Primarily, the allegations of fraud are based upon the commingling of the funds of the corporation with the personal funds of Louis and those of his mother. It appears from the amended complaint that the lips of Louis and the lips of the mother have been sealed by death.

The charges of embezzlement, etc., are directed against a man long since dead. In the absence of specific factual allegations of fraud, the law should not indulge in presumptions in favor of the plaintiff corporation. The amended complaint does not allege any direct acts of concealment on the part of Louis or any misrepresentation or deceit by him. The closest approach is the allegation that the other directors and stockholders were not permitted to examine the books; it is not alleged that a request therefor was ever presented to Louis.

As stated before, all the allegations of fraud up to 1935, based upon information and belief or otherwise, rest upon the fact that there was a commingling of funds. The fact was not concealed. The corporation, its directors and stockholders knew of this apparent irregularity covering an approximate period of twenty-four years. According to the complaint, also, the stockholders and directors knew that no directors' meetings were held, nevertheless they continued to accept dividends paid by Louis' personal checks. These facts, standing alone, are sufficient to establish the stockholders were put on notice of an apparent irregularity. Respondent quotes from *Vertex Investment Co.* v. *Commissioner of Internal Revenue*, 47 U. S. Board of Tax Appeal Reports, which is not challenged by appellant, as follows: "The fact that he [Louis] kept the funds of petitioner [appellant] in his own account should have been known to the other stockholders, since they were paid dividends from time to time by checks drawn on his personal account."

The means of knowledge which was clearly available to plaintiff and the stockholders thereof is equivalent to knowledge. (*Consolidated R. & P. Co.* v. *Scarborough, supra; Bainbridge* v. *Stoner,* 16 Cal.2d 423 [106 P.2d 423];

*Nighbert* v. *First Nat. Bk. of Bakersfield,* 26 Cal.App.2d 624 [79 P.2d 1105]; *Haley* v. *Santa Fe Land Imp. Co.,* 5 Cal. App.2d 415 [42 P.2d 1078]; *Daily Tel. Co.* v. *Long Beach Press Pub. Co.,* 133 Cal.App. 140 [23 P.2d 833]; *Turman* v. *Holmes,* 29 Cal.App.2d 198 [84 P.2d 225]; *Myers* v. *Metropolitan Tr. Co. of Cal.,* 22 Cal.App.2d 284 [70 P.2d 992].)

■ Delay in discovering a fraud is sometimes excusable in cases involving a confidential relationship. It should be noted that this is not an action by the individual stockholders or directors against Louis, as trustee, but by the corporation against the widow of Louis individually and as executrix of his estate. So far as Louis was concerned, in his capacity as president of the corporation he was the agent thereof. If, over a long period of time, he adopted the policy of placing the funds of the corporation in his personal account, and the corporation, through indolence and neglect, "or by want of ordinary care" on the part of its directors permitted such practice, the agent may assume that he has the authority and approval of the principals to so act. (Civ. Code, sec. 2316.)

■ It was the duty of the corporation to know its own books, and the stockholders had a right to inspect them. (*Wood* v. *Carpenter,* 101 U.S. 135 [25 L.Ed. 807]; *Curtis, Receiver,* v. *Connly, supra.*) In *County etc. Bk.* v. *Coast D. & L. Co.,* 46 Cal.App.2d 355, 359 [115 P.2d 988], the following facts are shown: "It appears that all transactions by defendant company, including this, were handled in an altogether informal manner; that no directors' meetings were ever actually held, the resolutions and minutes being prepared by Poletti, and he and Morelli simply counting 'the other directors in.' Between 1921 and 1934 no directors' meetings were ever, in fact, held, although the record shows numerous 'resolutions' including the one above-mentioned, 'passed' by defendant company." The majority opinion (petition for hearing denied by the Supreme Court) further states (p. 367): "As directors and officers of the company, it was their duty to know what was being done by Poletti and how he was performing his duties as general manager. They cannot be permitted to disregard their duties for thirteen or fourteen years, and then, after receiving the benefits of the transaction, and when the particular transaction does not turn out advantageously, as an afterthought, contend that their agent was unauthorized to perform the questioned act." The precise

point in that case is not raised herein, but the statement on the duties of directors is illuminating.

▉ Appellant corporation, according to the complaint, had actual knowledge of circumstances which should have prompted it to examine the books irrespective of any possible personal confidential relationship between the president thereof and the stockholders. In some instances affectionate brothers and sisters may hesitate to make a charge of fraud against one another, but if the delay is unduly prolonged the existence of the relationship should not prevent the statute of limitations from becoming effective (*Mackall* v. *Casilear,* 137 U.S. 556 [11 S.Ct. 178, 34 L.Ed. 776]; *Bacon* v. *Soule,* 19 Cal.App. 428 [126 P. 384]), particularly if the delay is twenty-four years and in the meantime the accused dies.

The answer to the question involved as regards the first twenty-four years of the existence of the corporation is well set out in *Kenton* v. *Wood,* 56 Ariz. 325 [107 P.2d 380, 383], where the court said: "This is an action by a minority stockholder and director to recover for the benefit of the corporation money which he alleges was misapplied by a co-director. While defendant was general manager of the corporation during the time in which it was contended there was a discrepancy in its accounts, plaintiff was also a member of its board of directors, and such board had both the ultimate authority and responsibility for the management of the corporation. It is true that directors are trustees for the benefit of the stockholders of a corporation, but there is no fiduciary relation between two directors as such, and since this was not an individual action between plaintiff and defendant to recover money which it was alleged that defendant, as trustee for the benefit of plaintiff, owed the latter, we think family relationship between them as individuals cannot create a fiduciary relation between them in the present case. . . . Plaintiff did not occupy the position of an ordinary stockholder, who can only have an inspection of the records of the corporation by a special effort and who is under no duty to inspect them. He was a director charged with the duty of guarding the interests of the corporation and, therefore, of examining all of the acts of its officers and its records. We think under these circumstances that a delay of approximately eight years by the plaintiff before he brought his action was laches, if, indeed, the statute of limitations had not actually run. (*Guerin* v. *American S. & R.*

*Co.*, 28 Ariz. 160, 236 P. 684; *Pourroy* v. *Gardner*, 122 Cal. App. 521, 10 P.2d 815.)'' On the question involved on this appeal, namely, that the corporation had actual knowledge of its own affairs and of cirumstances that should have led to an investigation, see *Consolidated R. & P. Co.* v. *Scarborough, supra; Underhill* v. *Santa Barbara etc. Co.*, 93 Cal. 300, 312 [28 P. 1049]; *Lady Washington C. Co.* v. *Wood, supra; Daily Telegraph Co.* v. *Long Beach Press Pub. Co., supra; Pourroy* v. *Gardner, supra.*

The statute of limitations started to run long before the death of Louis. The allegations of subsequent occurrences are not relevant to the case. (*Del Campo* v. *Camarillo*, 154 Cal. 647 [98 P. 1049].) For that reason the further contentions of respondent—that appellant was chargeable with knowledge of the true facts upon the election of Samuel, brother of Louis, as president of the corporation following the death of the latter in 1935; that there is no excuse for the delay after the alleged discovery of fraud in September 1937; that the action is barred by laches; that appellant is barred either by the doctrine of election of remedies or the doctrine of *res judicata*—need not be considered. The last point is based upon the fact that appellant in February 1936 elected to file a claim as a general creditor of Louis in the amount of $134,479.78, plus interest. In March of 1937 the corporation and each of its stockholders and directors accepted assets valued at $173,650 in settlement of all claims against the estate of Louis, and the ''discovery'' by Edgar B. Schwabacher in September of the alleged fraud was prior to a ratable and subsequently a final distribution of the remainder of the estate of Louis. The merits of these contentions by respondent, or the allegations of the complaint covering the period from 1935 to 1940 need not be considered in view of our conclusion that the statute of limitations started to run within the previous, twenty-four-year, period.

The cases cited by appellant, covering the twenty-four-year period, are not in point. They involved actions by stockholders, and not by the corporations, or were suits to reform conveyances, or it was determined that there were no circumstances to arouse suspicion, or that allegations of concealment appeared in the complaint, or they do not involve the statute of limitations.

When it is ''clear'' that a complaint may be amended to state a proper cause of action *(Wennerholm* v. *Stanford*

*Univ. Sch. of Med.,* 20 Cal.2d 713 [128 P.2d 522]), a review-ing court, though no request to amend is presented, may reverse the order sustaining the demurrer and direct an amendment. (Code Civ. Proc., sec. 472c.) The complaint alleges knowledge of the commingling of funds. It must be assumed that plaintiff stated its cause as favorably and com-pletely as possible. No amendment would be available to deny knowledge that should have been possessed by appellant.

The judgment appealed from is affirmed.

Knight, J., concurred.

PETERS, P. J.—I dissent.

I am of the view that the majority opinion is predicated upon several basic misconceptions of the nature of the cause of action pleaded, and upon a misunderstanding of the legal principles applicable to such an action.

That the majority opinion is predicated upon basic mis-conceptions of the allegations of the complaint can be readily shown. That opinion correctly summarizes some of the alle-gations, and then, in my opinion, misinterprets them. Thus, after summarizing sufficient of the allegations to indicate beyond doubt that the basic charge in the complaint is that Louis misappropriated over $500,000 of corporate assets, the majority opinion proceeds to discuss those allegations as if they charged a mere commingling of personal with corporate assets that could easily have been discovered by a cursory examination of the corporate books. Thus, the majority opinion interprets the complaint as follows: "Primarily, the allegations of fraud are based upon the commingling of the funds of the corporation with the personal funds of Louis and those of his mother . . . As stated before, all the allega-tions of fraud up to 1935, based upon information or belief or otherwise, rest upon the fact that there was a commingling of funds." Based upon this major premise, the majority opinion then holds that, as a matter of law, the other stock-holders should have discovered the commingling years before Louis died. This conception that Louis was a simple debtor of the company who had commingled personal with corporate assets permeates the majority opinion. It is true that the corporate books did show that Louis was indebted to the corporation for over $134,000, but the present action is not to recover that sum. That debt was discovered shortly after

Louis died, and his estate settled that obligation. Then in 1937 the other stockholders discovered that, in addition to that sum, Louis had embezzled large sums of money and property not shown by the corporate books. The present action was brought against the distributee of Louis' estate to impose a trust upon the property that can be traced as stolen property. Stripped of non-essential allegations, the cause of action pleaded is that Louis, who had the full confidence and trust of his brothers and sisters, over a period of twenty-four years was false to that trust; that during that period he "misappropriated, embezzled, and converted to his own use and benefit" over $500,000 of corporate assets; that in order to ascertain the exact amount it will be necessary to have an accounting not only of the corporate books, but of the personal books of Louis and of the books of other persons and companies with whom Louis dealt; that the fraud of Louis was discovered in September, 1937, under circumstances later to be discussed. Thus it will be seen the action is not one based on a simple commingling easily ascertainable from the corporate books.

There is another factual matter that should be mentioned. The majority opinion, apparently in justification of applying a strict and technical interpretation to the allegations of the complaint, several times emphasizes that "the lips of Louis . . . have been sealed by death," and that the charges "are directed against a man long since dead." The opinion then goes on to hold, however, that the cause of action was barred *before* Louis died. If that is so, the fact that he is now dead has no relevance to the discussion.

That the majority opinion is predicated upon a misunderstanding of the legal principles applicable to such a case, is also readily apparent. It holds that, as between the trusted managing officer who embezzles corporate funds and the corporation that he defrauds, the officers and stockholders are chargeable, as a matter of law, with knowledge that the officer they implicitly trusted is an embezzler, because, forsooth, they should not have trusted him—and this in a case where the corporation is a family corporation, managed by mutual consent by one brother who had the complete faith of his brothers and sisters, and who, so the complaint charges, was false to that trust. This startling result is reached by applying, incorrectly I believe, the rule applicable to the rights between corporations and third persons who deal with the managing officer. Obviously, when the board of directors

permits one of its members to manage a company and to deal with third persons, it cannot later avoid a transaction entered into by the managing officer with such third person on the claim that the other members of the board did not know the managing director was exercising the challenged power. Of course, in such a situation, the other directors are chargeable with such knowledge as a matter of law. The reasons for such a rule are obvious. That is all that was held in *County etc. Bk.* v. *Coast D. & L. Co.,* 46 Cal.App.2d 355 [115 P.2d 988] (of which I was the author), from which several quotations are contained in the majority opinion. But that rule has not, and should not have, any application when the rights of third persons are not involved, and where the corporation is seeking to recover its stolen assets.

The opinion as written holds that the cause of action pleaded was barred before Louis died in 1935. Stated another way, were Louis alive today and in possession of the stolen property, or the proceeds or transmutations of the stolen property, the action of the corporation to impose a trust on that stolen property would be barred, as a matter of law, although the corporation brought the action within three years of the date of the discovery of the fraud, because the other stockholders should have discovered the thefts sooner. Before discussing the propriety of such holding at length, some reference should be made to the nature of the relief sought in this action. Plaintiff prays that an accounting be had in order to ascertain the amount of the misappropriations, and that a trust be impressed on property now in the hands of the distributee of the estate of Louis. The accounting is requested not only of the corporate books, but also the books of Louis, and also the books, records and entries of various other persons, firms and corporations with whom Louis had dealings.

With these preliminary remarks, consideration should now be given to the exact allegations of the complaint. It alleges at some length the background of the present controversy. It alleges that the plaintiff corporation was organized with 5,000 shares of stock held equally by Louis A. Schwabacher and each of his four brothers and sisters, Mina A. Eckstein, Jennie S. Rosenbaum, Samuel E. Schwabacher and Edgar B. Schwabacher. Sarah Schwabacher, mother of the stockholders, transferred stocks, bonds and securities to the corporation upon its formation, which were its sole assets, and

which, with their accretions, continue to be its sole assets. The business of plaintiff consists of dealing in securities and commodities for its own account, investing its assets and receiving interest and dividends. It is further alleged that the company was organized in 1911. Louis Schwabacher died August 1, 1935. The decree of final distribution in his estate was entered on May 2, 1938. This action was filed May 3, 1940, almost five years after the death of Louis. The misappropriations are alleged to have commenced upon formation of the plaintiff and to have continued until the death of Louis, almost twenty-four years later. The theory of plaintiff is that the alleged defalcations of Louis were not discovered until September, 1937, that the action is, therefore, within the three-year-period after discovery limited for commencement of actions based on fraud.) Sec. 338, subd. 4, Code Civ. Proc.)

Defendant contends that the plaintiff is charged with notice of the alleged misappropriations as of a much earlier date than September, 1937; that in any event the delay from discovery in September, 1937, as alleged, to May 3, 1940, when suit was filed, constitutes laches as a matter of law.

The complaint alleges that Louis Schwabacher, the oldest of the brothers and sisters, at all times had exclusive management of the corporate affairs, without consultation with or advice from the others. He managed and controlled plaintiff corporation as if it were his individual property. In the period of almost twenty-four years before the death of Louis, no directors' or stockholders' meetings were held, and no financial statements were rendered the other stockholders. It is alleged that no separate bank account was maintained for the company, and that Louis deposited plaintiff's funds in his personal bank account, or otherwise commingled plaintiff's funds with his personal funds. Dividends were paid from time to time.

On the death of Louis in 1935, one of the brothers, Samuel Schwabacher, co-executor of the estate of Louis, was elected president of plaintiff at a directors' meeting. The law firm which at all times had been the attorney for plaintiff company, and which continued to be its attorney until January 1938, was also attorney for Samuel Schwabacher and Norma Schwabacher as executors of the estate of Louis, and for Norma Schwabacher individually. A member of that firm is a nephew of Norma Schwabacher.

In March, 1937, a settlement of the liability of Louis Schwa-

bacher to the plaintiff corporation was entered into. On the theory that the corporate books showed that Louis was indebted to the plaintiff in the amount of $134,479.78, plaintiff's claim for that sum, with interest, was filed and approved. A resolution was adopted by the directors in March, 1937, that the corporation accept certain stock in the estate of Louis, including his 1,000 shares of stock in plaintiff corporation, in discharge of the claim. In addition, the four brothers and sisters of Louis executed their written consents to this settlement and it was carried out.

By the complaint herein plaintiff seeks to avoid the settlement insofar as it fixes the amount of Louis' indebtedness on the ground that it was entered into without knowledge of the fact that the indebtedness of Louis arising from his misappropriation of corporate property was in an amount exceeding the settlement. It is averred on information and belief that the value of the moneys and properties converted exceeds the sum of $500,000, that the exact amount is unknown to plaintiff and cannot be ascertained until after an audit and account is made not only of the corporate books and the books of Louis, but also the books, records and entries of various other persons, firms and corporations with which Louis had business dealings. It is alleged that the member of the law firm, referred to above, who was a nephew of Norma Schwabacher, was active in arranging the settlement and by his representations and advice prevented plaintiff from acquiring knowledge of the facts. The four brothers and sisters discovered the facts in September, 1937, under circumstances later set forth. Suit was filed in May, 1940.

Defendant contends that the other stockholders and directors must be deemed to have discovered the alleged misappropriations before the death of Louis Schwabacher; that the facts as alleged as a matter of law placed on them a duty of inquiry into the corporate management and records, which, if pursued, would have led to discovery. Since this action was brought almost five years after the death of Louis, it was barred in its entirety if the stockholders and directors were charged with knowledge before his death.

In considering the question whether there was a lack of diligence in failing to discover the facts before the death of Louis, I am of the view that upon the facts alleged it is immaterial whether all, or less than all, were originally elected directors. That is, it is not necessary here to determine whether,

if the facts were such as to impose a duty of investigation on directors, but not on those who were stockholders only, the constructive notice of the directors would be imputed to the corporation to bar an action by it for the benefit of all stockholders. (See 39 Columb.L.Rev. 842; 41 Columb.L.Rev. 686; 54 Harv.L.Rev. 1040.) Under the facts alleged the "directors," other than Louis, were mere stockholders and should be so treated.

It appears that the sole control of the corporation by Louis was with the knowledge and consent of all concerned. For a long period of years the corporation was administered as if he were the sole director. Under such circumstances, Louis could not in his lifetime, nor those who succeeded to his estate after his death, contend in avoidance of liability for his fraud that the directors were under a duty to themselves and to those stockholders, if any, who may not have been directors, to discharge actively the functions of director. The obligation of the directors implied in the corporate form of organization had been altered by long continued practice to which all consented. No question is here involved as to the liability of the inactive directors to third persons for malfeasance of the sole active director.

The rule is well settled that where all members of the board of directors in control of a corporation are implicated in a fraud against it, their knowledge is not the knowledge of the corporation to bar an action by it or a derivative suit by its stockholders on its behalf. (*San Leandro Canning Co.* v. *Perillo,* 211 Cal. 482 [295 P. 1026]; *Whitten* v. *Dabney,* 171 Cal. 621 [154 P. 312]; 6A Cal.Jur. p. 1232, sec. 704.) Here, with the consent of all, Louis was, in effect, the sole director in exclusive management of the corporation. His knowledge in the circumstances alleged is not the knowledge of the corporation, and the question is, whether the four brothers and sisters as *stockholders* of plaintiff should have discovered the misappropriations of Louis. If all stockholders were charged with notice more than three years before action brought, the plaintiff corporation cannot maintain this action.

The failure of the stockholders other than Louis to take "any active or any other interest" in the company is attributed to the confidential relations existing between Louis and the others, to their full confidence in his integrity and ability, and to the express "wish and direction" of their mother that Louis assume control. The mother was a widow, sixty-four years of age when the corporation was formed. Louis was

the oldest of the five stockholders and a man of wide business experience. He was forty-one years old. Samuel was twenty-seven, and Edgar, twenty-one. Neither they nor the two sisters had any business experience, the complaint alleges. Louis was looked upon as the head of the family.

It is further alleged that on one occasion, the date of which is not set forth, Samuel objected to the manner in which Louis handled a routine matter. His mother informed him that if he objected to the way in which Louis managed the corporation, or opposed him, she would disinherit him. He then withdrew his objection.

It is averred that Louis kept a minute book of purported directors' meetings, but that none in fact were held. None of the stockholders "ever saw or were permitted by said Louis A. Schwabacher to see" the books of account of plaintiff kept by Louis. It is alleged that Louis kept books of account of plaintiff, which, it is alleged on information and belief, did not contain true and correct entries of the transactions between plaintiff and Louis.

It is defendant's theory, sustained by the majority opinion, that the stockholders were guilty of lack of diligence as a matter of law. This charge of lack of diligence on their part during the lifetime of Louis, is based on the theory that they permitted him to have exclusive management of the corporation without calling him to account for his management. That this does not constitute lack of diligence as a matter of law is readily demonstrated.

I have heretofore said that Louis, were he alive, obviously could not rely on the other directors having abrogated their functions in his favor to defeat liability, since it was with the consent of all. Their lack of diligence, if any, consists in their failing either to call Louis to account for his exclusive management over a long period of years, or to examine the books or cause an audit to be made. The majority opinion holds that the failure of Louis to render such financial statements, when considered alone, or in connection with the fact that dividends were paid by his personal check, as a matter of law should have aroused the suspicion of the other stockholders and dictated inquiry into his management.

I am of the view that it cannot be held on the facts alleged in the complaint that as a matter of law the four brothers and sisters of Louis Schwabacher were chargeable with a want of diligence in failing to demand a report and account of

Louis or to procure an audit to be made of the corporate books. A fundamental factor in this case, as alleged, is the trust and confidence which the younger members of this family, inexperienced in business, placed in their eldest brother as the head of the family and a man of wide business experience. Dividends were paid from time to time, which doubtless lulled the stockholders into a sense of security. That Louis should have exclusive control was the express wish of the mother, who had provided the securities which constituted the assets of the company. It has been held, under some circumstances, that directors and stockholders are chargeable with what the books show. (*Turman* v. *Holmes*, 29 Cal.App.2d 198 [84 P.2d 225] ; *Daily Tel. Co.* v. *Long Beach Press Pub. Co.*, 133 Cal. App. 140 [23 P.2d 833] ; *Lady Washington C. Co.* v. *Wood*, 113 Cal. 482 [45 P. 809].) In other cases it has been held that in the absence of special facts which dictate inquiry, stockholders and even directors are not under a duty to know the corporate books. (*West* v. *Great Western Power Co.*, 36 Cal.App.2d 403 [97 P.2d 1014] ; *Prewitt* v. *Sunnymead Orchard Co.*, 189 Cal. 723 [209 P. 995] ; *Reid* v. *Robinson*, 64 Cal.App. 46 [220 P. 676].) In *West* v. *Great Western Power Co., supra,* the rule in *Lady Washington C. Co.* v. *Wood* is described as "radically curtailed" in *Prewitt* v. *Sunnymead Orchard Co., supra.*

If, as alleged in the complaint, Louis Schwabacher, has misappropriated corporate property in a large amount, I am of the view that the corporation, of which his brothers and sisters are stockholders, should not be held to have lost its remedy because Louis was trusted to the extent shown. I am of the view that this case is one where the following quotation is apposite : "The courts will not lightly seize upon some small circumstance to deny relief to a party plainly shown to have been actually defrauded against those who defrauded him on the ground, forsooth, that he did not discover the fact that he had been cheated as soon as he might have done. It is only where the party defrauded should plainly have discovered the fraud except for his own inexcusable inattention that he will be charged with a discovery in advance of actual knowledge on his part." (*Victor Oil Co.* v. *Drum*, 184 Cal. 226, 241 [193 P. 243].) It cannot be said that the conduct of the other stockholders in trusting their brother Louis to the extent that they did not ask for an accounting

of his stewardship or familiarize themselves with the contents of the corporate books is "inexcusable."

Defendant relies strongly on *Kenton* v. *Wood*, 56 Ariz. 325 [107 P.2d 380] for the proposition that the other four brothers and sisters as stockholders and directors were under a duty to know the corporate books. The majority opinion quotes from that case at length. There are statements in that opinion that support defendant. They are contrary to the weight of authority and should not be followed here. Moreover, the case is distinguishable on several grounds. There the action was brought as a stockholder's derivative suit on behalf of the corporation. The defendant, charged with diverting corporate property to his own use, was the son-in-law of the plaintiff, who up to a certain date was a stockholder as well as a director. The court said that it was the duty of the plaintiff as a director to examine the corporate books and records. Since the court also said that the defendant managed the corporation "as though it were his own private business," and that he "remained in entire control of the affairs of the corporation," defendant contends that the facts are analogous to those in the instant case. However, it does not appear that defendant thus conducted the business while plaintiff was a director. Plaintiff was employed by the corporation until December, 1934, when defendant discharged him. At the election of directors held in February, 1935, plaintiff was not elected a director. The opinion is not entirely clear, but the court's statement as to defendant's exclusive control would seem to relate to the period after plaintiff had ceased to be an employee and director of the company. In the case herein I have held that the duty of the four brothers and sisters of Louis was that of stockholders only by reason of the manner in which the corporation was managed with the consent of all.

There is a further distinction between the cited case and the one before this court. The opinion states that the plaintiff delayed approximately eight years before bringing suit. The date of bringing suit does not appear from the opinion, but the eight-year-period must have included time after the discharge of plaintiff. The situation, unlike that in the present case, was not one where harmony prevailed. The discord and friction between the plaintiff and his son-in-law in that case might well have required inquiry on the part of plaintiff.

In certain cases there are statements that there must be affirmative acts of concealment which prevent discovery of the fraud, that mere silence is not enough. (*Daily Tel. Co.* v. *Long Beach Press Pub. Co.,* 133 Cal.App. 140 [23 P.2d 833] ; *West* v. *Great Western Power Co.,* 36 Cal.App.2d 403 [97 P.2d 1014].) The true rule is that if the facts are such that the plaintiff is not chargeable with lack of diligence in failing to make discovery of the fraud, the statute of limitations does not commence to run, although the defendant has not made further representations to conceal it. Mere silence, where there is a duty to speak, and where it is known that those to whom the duty is owing are unaware, may as effectively prevent discovery as positive misrepresentations made to that end.

On this branch of the case I think that no other conclusion is reasonably possible but that the stockholders were not under a duty to know that the corporate books showed that Louis had appropriated to his own use money and property of the corporation of a value of more than $134,000, and hence they were not bound to investigate, by reason of knowledge of what the books showed, in order to discover the full extent of his peculations.

This is as far as the majority opinion goes. Inasmuch as it holds that the complaint was barred, as a matter of law, before Louis died in 1935, the majority did not find it necessary to consider other contentions of defendant. These will be considered *seriatim.*

The next question is whether the stockholders were charged with notice upon the death of Louis in August, 1935, or within such time thereafter that an action brought in May, 1940, was barred by the three-year-period of limitations. It is alleged that immediately after Louis' death, the brother Samuel was elected president of plaintiff and continued to be president until April 30, 1940, three days before the present suit was filed. Samuel was co-executor of the estate of Louis with Norma Schwabacher, widow of Louis. The firm of attorneys which had represented the plaintiff corporation from its formation was also attorney for the executors and for Norma as legatee and devisee of Louis.

It is conceded by the complaint that Samuel knew on or about August 1, 1935, which is the date of the death of Louis, that the books of account of plaintiff showed a balance owing to plaintiff from Louis in the sum of $134,479.78, but it is alleged that the other stockholders did not know this until

March 15, 1937, which is the date of the settlement agreement. Neither Samuel nor the others knew that the indebtedness of Louis shown by the books of the plaintiff corporation arose from a misappropriation of corporate property, nor that there were further misappropriations, until September, 1937.

The defendant argues that Samuel, as executor of the estate of Louis and president of plaintiff, represented adverse interests. However, as executor his obligation was to act for creditors of Louis, including plaintiff, as well as for the devisees and legatees of his estate. Samuel's personal financial interest would lie on the side of plaintiff, since he was a stockholder, rather than with Norma as legatee of the estate of Louis.

The firm of attorneys referred to above clearly represented adverse interests, although it is not contended that this was not with the knowledge and consent of all. The interests of plaintiff corporation, and of Norma Schwabacher as legatee and devisee of the estate of Louis, were conflicting. It is not alleged that any stockholder of plaintiff was represented by independent counsel.

In explanation of the failure of Samuel or the other stockholders to seek an audit or to discover the facts with reference to the nature and amount of the indebtedness of Louis, the complaint sets forth conduct and representations of that member of the legal firm referred to above who was a nephew of Norma Schwabacher, an attorney both for her and for plaintiff. It is alleged that the attorney was endeavoring to preserve for the benefit of Norma as large a portion of the assets of Louis as possible.

In paragraph XXXII it is alleged that between August 1, 1935, to and including January, 1938, Samuel, as president of plaintiff corporation, and as an executor of the last will of Louis, continuously consulted and advised with this attorney with respect to the indebtedness of Louis to plaintiff "as shown upon the books of account of plaintiff." It is alleged that the attorney falsely advised Samuel that the books of account "were true and correct and had been examined and certified to by certified public accountants" (paragraph XXXIII); that Louis had not embezzled, misappropriated or converted to his own use any funds of plaintiff; that the books of account merely showed a balance due upon a book account, and any claim or action by plaintiff would have to be based upon such account and for the amount shown to be

owing on such books; that the balance shown to be due from Louis to plaintiff was not "moneys of plaintiff corporation used by said Louis A. Schwabacher without authorization from said plaintiff corporation for his own purposes."

The attorney is not a party to this action, which seeks to hold Norma Schwabacher by reason of her receipt of property of plaintiff misappropriated by Louis.

The attorney prepared a creditor's claim on behalf of plaintiff, which is attached to the complaint as an exhibit, and which was presented on February 18, 1936, after numerous conferences between the attorney and Samuel. The claim was signed and verified by one Helen M. Crowley as secretary of plaintiff. The claim recites that the books of plaintiff, kept by Louis, were "from time to time" examined and certified by certified public accountants; that starting with the year 1911, and until the death of Louis, dividend, coupon, rental and other payments to plaintiff were received by Louis and by him deposited in a bank account in which were also deposited funds of Louis Schwabacher, and Sarah Schwabacher, the mother; that true and correct books were kept for said account, which "correctly and accurately showed and now show each receipt thereof and disbursement therefrom and the credits of and charges against all persons whose funds were deposited in said account and who made withdrawals therefrom." It is further recited in the claim that separate records and accounts were kept for each person, including Louis Schwabacher, whose funds were received in the account and who were charged with disbursements therefrom. At the time of the death of Louis the balance shown to be owing from him, without interest, was $134,479.78. The amount owing from Louis varied from time to time, the claim recites, as credits for payments made by Louis in the account reduced the balance owing from him, and on other occasions charges against Louis on the account increased the amount owing from him. The claim is for $134,479.78, plus interest at the rate of 5 per cent from the respective dates of the advances, amounting to $26,895.80 to the date of the claim, and for accruing interest.

In paragraph XXXIV of the complaint it is alleged that the attorney finally advised Samuel that he would recommend to the executors that they settle the claim of plaintiff by transfer to plaintiff of eighty-six shares of Schwabacher Bros. & Co., Inc., at an agreed valuation of $500 per share, and 1,000 shares of stock in plaintiff corporation at an agreed

valuation of $120 per share, and also by waiving the estate's claim to dividends on the stock in plaintiff corporation, which dividends had been declared in the amount of $10,650, but had not been paid. This 1,000 shares of plaintiff corporation constituted the total interest of the estate of Louis in plaintiff corporation.

The attorney further advised "plaintiff corporation and Samuel as president thereof" that plaintiff should accept the offer, that acceptance would best serve plaintiff's interests. Acting upon the advice of the attorney, "plaintiff corporation and Samuel I. Schwabacher, as president of said plaintiff corporation" agreed to and did accept the offer. The attorney prepared resolutions to be adopted at a directors' meeting for settlement of plaintiff's claim. Acting upon the representation and advice of the attorney and Samuel "to the effect that plaintiff corporation was receiving all that it was entitled to" from the estate of Louis, and that the settlement was for its best interests, the directors of plaintiff adopted the resolutions. (Paragraph XXXV.)

At the same time the four brothers and sisters of Louis also executed a form of consent to the settlement prepared by the attorney.

Paragraph XXXVI contains further allegations concerning the attorney. It is averred that "in his capacity as attorney for and advisor of plaintiff corporation" he did not advise Samuel as president of plaintiff to make or cause to be made an examination or investigation of transactions between Louis and plaintiff corporation; that he did not advise Samuel to make or cause to be made an examination or audit of the purported books of account of plaintiff, but advised him that the books of account had been certified by certified public accountants; that the attorney did not advise Samuel that Louis had misappropriated and embezzled large sums of money belonging to plaintiff, but represented that the claim of plaintiff was based "only upon a book account representing an alleged authorized indebtedness of said Louis A. Schwabacher to the plaintiff corporation in the sum of $134,-479.78"; that the transactions between plaintiff and Louis were "in the nature of a loan," and plaintiff was not entitled to damages. It is also alleged on information and belief that the attorney "knew that the said Louis A. Schwabacher had misappropriated, embezzled and converted to his own use assets of said plaintiff."

The allegations with reference to the discovery that the indebtedness of Louis to the corporation arose from his misappropriation of corporate property, and that it exceeded the sum of $134,479.78, are set forth in paragraph XXXIX. In 1937 the brother Edgar experienced financial difficulties and sought a loan from plaintiff. He informed his attorney of the settlement and requested him to determine the fairness of the valuation placed upon the stocks accepted by plaintiff. Edgar's attorney was informed of the manner in which Louis had conducted the business of plaintiff. "Further investigation" disclosed some of the misappropriations, embezzlements and conversions of plaintiff's funds by Louis. The investigation was concluded during the month of September, 1937, at which time the stockholders, officers and directors of plaintiff first ascertained the facts concerning the transactions between Louis and plaintiff.

The purpose of the following paragraph of the complaint (XL) is to set forth the reason why plaintiff delayed filing suit from discovery in September, 1937, to May 3, 1940. It is averred that the stockholders of plaintiff sought to conceal Louis' misappropriations from their mother, who was ninety years of age when Louis died in 1937 and was deeply grieved by his death. She was still alive when suit was filed in 1940 to prevent the running of the statute of limitations, but has since died.

Under the facts alleged, I am of the opinion that the directors, other than Samuel, who had actual notice, should be deemed charged with constructive notice of the indebtedness of Louis shown by the corporate books as of a date soon after the death of Louis; that upon his death it was their duty to ascertain at least in a general way the corporate financial status, and that any inquiry with such purpose would have revealed to them that the books showed such indebtedness. This conclusion follows from the fact that, although, after the death of Louis, Samuel assumed the management of the company, there are no allegations that the other stockholders and directors allowed him to manage the company without supervision or control. In the absence of allegations to the contrary, it must be assumed that the board of directors was active and functioning. Such a board, in the exercise of due diligence, taking over after Louis' death, would be required to ascertain the financial status of the company. Had they done so, they would have discovered the indebtedness of Louis to

the company of $134,479.78. As to that fact, the board must be charged with constructive notice in 1935. But knowledge of that fact does not, as a matter of law, bar the present action. The present action does not involve the admitted indebtedness of Louis. It is an action to recover an amount in excess of that indebtedness as shown by the books to be owing from Louis to the corporation. The amounts here involved were not discovered, so it is alleged, until the attorney for Edgar Schwabacher caused an investigation to be made in 1937. As an excuse for failure to undertake at an earlier date the investigation which led to discovery, the plaintiff relies on the representations and advice of the attorney who was the nephew of Norma Schwabacher and also her attorney and attorney for plaintiff. The representations of the attorney preliminary to the settlement of 1937 were alleged to have been made to Samuel only. However, I am of the view that if director Samuel, who had actual notice of what the books showed, is excused from his failure to institute an investigation at an earlier date, the other directors, who had only constructive notice of what the books showed, cannot be charged, as a matter of law, with constructive notice of the additional misappropriations because of their failure to investigate. The attorney represented the corporation. When the directors, other than Samuel, learned in March, 1937, what the books showed, they relied on the attorney's advice, and it will be presumed that had they sooner acquired actual knowledge of the contents of the books they would have relied on the advice of the attorney, as Samuel had done and as they did later when they received actual notice of what the books showed in March, 1937.

I am of the view that, upon the facts alleged, Samuel (and therefore the other stockholders) cannot be charged with lack of due diligence as a matter of law. Plaintiff relied on the representations of its attorney. According to the allegations, that attorney, who was also representing the adverse interests of the defendant as legatee of Louis, falsely represented the very facts that the board of directors, in the exercise of due diligence, should have investigated. Samuel, as managing officer, did not cause the investigation to be made because he was told by the attorney that an audit had been made, and that the books showed transactions in the nature of a loan by Louis—not a misappropriation. Under the circumstances, the corporation, or its officers or stockholders, can-

not, as a matter of law, be charged with lack of due diligence in failing to ascertain facts that they were prevented from investigating by the false representations of the attorney for defendant.

On the facts alleged, plaintiff was justified in relying on the representations of its counsel. While it is true that both principals are bound by the acts of a dual agent appointed with their consent, this rule has no application where the principals would not have consented to such dual agency had the facts known to the agent been known to them. The complaint alleges (par. XLI) that, had the plaintiff known the facts, it would not have filed the claim in the form in which it was filed, would not have consented to the settlement, and would not have consented to the dual agency, but would have secured independent counsel. The rule as to dual agents certainly has no application where the agent acts fraudulently on behalf of one of his principals and against the interests of his other principal. '(See cases collected 2 Am.Jur. p. 214, sec. 266, et seq.; Restatement, Agency, sec. 392.) Defendant is in no position to claim that the stockholders should have discovered the facts in 1935, when the complaint alleges that her attorney, by false representations, prevented the very investigation that would have disclosed those facts. Bluntly stated, defendant contends that the statute of limitations has run because the stockholders should have discovered in 1935 the misappropriations of her husband, when the complaint alleges that such fact was not discovered because her attorney, by false representations, successfully prevented the discovery of those facts. The statute of limitations was never intended to act as a shield in such a case.

Defendant next contends that plaintiff was guilty of laches as a matter of law in delaying action from discovery in September, 1937, to May, 1940. It is the law that delay for less than the period of limitations will not bar an action unless it has resulted in prejudice to the opposing party. (*Fry* v. *Board of Education,* 17 Cal.2d 753, 761 [112 P.2d 229]; *Burns* v. *Ross,* 190 Cal. 269 [212 P. 17]; *Victor Oil Co.* v. *Drum,* 184 Cal. 226 [193 P. 243]; 5 Cal.Jur.Supp., p. 503, sec. 62, p. 505, sec. 68.) It has been said that where the action is one for rescission it will be dismissed unless brought promptly without necessity for a showing of damage to the defendant. (*Victor Oil Co.* v. *Drum, supra; Stevens* v. *Bryson,* 135 Cal. App. 684 [27 P.2d 932].) The suit herein is not one for

rescission of the settlement as made. The plaintiff does not offer to restore the property received, but seeks to retain it. The action is one to secure a remedy for additional appropriations to those for which satisfaction has been given by the settlement. Plaintiff seeks to avoid the settlement only insofar as it fixes the extent of the indebtedness of Louis. In such a case the rule applied in suits for rescission does not control.

I cannot agree with defendant's contention that the complaint herein shows prejudice to defendant from the delay, as a matter of law. It does not appear, as a matter of law, that defendant will be in a worse position if plaintiff establishes a right of recovery in the suit brought in May, 1940, than she would have been if suit had been filed in September, 1937. Any facts that will show such damage are a matter of defense and may be pleaded in the answer, and determined at the trial. Plaintiff contends that evidence has been lost and the recollection of witnesses has become dim. She further contends that since the decree of final distribution has been entered in the estate, this court may take judicial notice that inheritance taxes and attorneys' fees have been paid on the basis of the property here claimed being part of the estate, which would not have been paid had the suit been brought before distribution in 1938. On the other hand, if plaintiff is able to prove on trial herein that the "estate" of Louis as probated consisted of property which can be traced to his misappropriations from the corporation, then plaintiff, and not defendant, has lost by such payment. The argument as to prejudice suffered by defendant is based, in part, on the erroneous premise that plaintiff must restore to defendant the securities received in the settlement of 1937, which, she argues, may have declined in value between 1937 and 1940. I am of the view that on the facts alleged the question of laches should be determined after trial, rather than on demurrer.

Defendant also contends that the complaint is insufficient for the reason that some of the charges of fraud against Louis are made on information and belief, and the facts which give rise to the belief are not stated, relying on such cases as *Dowling* v. *Spring Valley Water Co.*, 174 Cal. 218 [162 P. 894]; *Mason* v. *San-Val Oil & Water Co., Ltd.*, 1 Cal.2d 670 [36 P.2d 616]; *North* v. *Union Savings & Loan Association* 59 Ore. 483 [117 P. 822]. The rule of these cases is not here applicable. It is averred in paragraph XX "that during all of the times herein mentioned the said Louis A. Schwabacher

had misappropriated, embezzled and converted to his own use and benefit large sums of money and properties of great value belonging to the plaintiff corporation, the exact amount and character of which said money and properties are unknown to plaintiff at the present time. . . .'' This is the basic charge of the complaint, and it is not on information and belief.

It is true that the paragraph proceeds to allege on information and belief that the value of said moneys and properties exceeds the sum of $500,000, the exact amount of which can be ascertained only after an audit and accounting is made. It further alleges, on information and belief, that the sum of $134,479.78, which Louis' books of account acknowledge that he owed the company, is far less than the actual sum converted by him to his own use. Plaintiff's estimation of the amount of the loss, made on information and belief, does not qualify the above positive allegation as to the fact of misappropriations. Whatever inconsistencies and ambiguities there may be between the positive allegation above quoted and other provisions of the complaint have not been made the subject of special demurrer. The complaint is good as against general demurrer. The trial court may, in its discretion, require the clarification of uncertainties or ambiguities in the complaint. (*Wennerholm* v. *Stanford Univ. Sch. of Med.*, 20 Cal.2d 713 [128 P.2d 522]; *Guilliams* v. *Hollywood Hospital*, 18 Cal.2d. 97 [114 P.2d 1].)

The next contention of defendant is that the remedy sought—imposing a trust on the property in the hands of defendant—under the facts here alleged, is not available to plaintiff. Where a trustee has misappropriated trust property, the *cestui* after death of the trustee may either recover a money judgment for the value of the property, with incidental damages, on the theory that the decedent was personally liable therefor, or he may reclaim the trust property, tracing it where it has changed form. (*Mix* v. *Yoakum*, 200 Cal. 681 [254 P. 557]; *Estate of Dutard*, 147 Cal. 253 [81 P. 519]; *Elizalde* v. *Elizalde*, 137 Cal. 634 [66 P. 369, 70 P. 861]; *Lathrop* v. *Bampton*, 31 Cal. 17 [89 Am.Dec. 141].) If the latter course be pursued, a claim need not be filed in the estate, for the theory is, that trust property and its proceeds are not part of the estate. In the case herein plaintiff filed a claim for $134,479.78, the amount of the indebtedness of Louis as shown on plaintiff's books, and for interest. The

claim was not drawn on the theory of tracing trust property, and the settlement was not had on that basis. In the settlement plaintiff received the one thousand shares of plaintiff's capital stock which Louis had owned from the formation of plaintiff, and which could not be property of plaintiff which Louis had converted to his own use, or the proceeds of such property. Thus the settlement was of a personal liability of Louis.

Defendant correctly contends that plaintiff is without right to recover a judgment for the alleged additional misappropriations based on personal liability of Louis for the reason that such recovery should have been sought in the probate proceeding before distribution. Defendant further contends that plaintiff's retention of the property received in the settlement of 1937 constitutes an election of remedies which bars its right to follow the trust property into the hands of Norma Schwabacher, to whom the estate of Louis was distributed in 1938. This last contention is unsound.

I agree with defendant's position that plaintiff may not now, after distribution, recover a money judgment against Norma Schwabacher, distributee of the estate of Louis, based on a theory of personal liability of Louis. When plaintiff learned that more had been taken than shown on the books, the time for filing claims had expired. Defendant suggests that the claim as filed might have been then amended to demand a larger sum, or that the misappropriations might have been treated as sounding in tort, in which event an action for a money judgment may be brought without the necessity for filing a claim, the money judgment to be paid in due course of administration. It is not necessary to decide what remedy, if any, is available to reach assets of an estate in satisfaction of a personal liability of the decedent based on fraud, or which has been fraudulently concealed, and not discovered until after the time for filing claims has passed. At any rate, where the facts are discovered before distribution, as in the present case, whatever proceedings may be available to reach assets of the estate should be set in motion before distribution, in order that the closing of the estate may be postponed to await the outcome. In default of such proceedings prior to distribution, the creditor should not be permitted to hold the estate in the hands of distributees liable to the satisfaction of a claim based on personal liability of the de-

cedent. This matter is of importance in the present case since the complaint contains reference to items which could be recovered only on a basis of personal liability of the alleged wrongdoer. For example, the complaint alleges damages suffered by reason of the misappropriations of Louis in addition to loss of the property. Such damages may not be recovered in the circumstances alleged in this case after distribution of the estate, which took place after knowledge that damages had been suffered. (*Elizalde* v. *Elizalde,* 137 Cal. 634 [66 P. 369, 70 P. 861] ; *Noble* v. *Noble,* 198 Cal. 129 [243 P. 439, 43 A.L.R. 1235].)

The remedy of following trust property, on the other hand, is not based on a theory of reaching assets of the estate as such, but, rather, as pointed out above, is predicated on the premise that such property in its original or changed form constitutes no part of the estate of the decedent. The failure of the *cestui* to institute action to recover the property before distribution should not have the same effect as a failure to commence proceedings which have for their purpose reaching property of the estate in satisfaction of a personal liability of the decedent. For these reasons, it seems quite clear that the action to reach trust property that has been misappropriated is not barred as a matter of law because distribution has taken place and the *cestui* had knowledge prior to distribution of the alleged misappropriations.

The contention that the remedy of reclaiming trust property is not available by reason of the doctrine of election of remedies is also unsound. The settlement of the indebtedness of Louis to plaintiff as shown on the books was based on the theory of a satisfaction of a personal liability of Louis. Upon the facts alleged this settlement was entered into without knowledge, actual or constructive, of misappropriations in a larger amount. Choice of a remedy without full knowledge of the facts does not constitute an election. (10 Cal.Jur., p. 6, citing cases.) Defendant contends, however, that when plaintiff acquired knowledge in September, 1937, it was required then to elect, and if it wished to follow the misappropriated property it should have rescinded the settlement promptly and restored the property received under it. This plaintiff did not do. In the complaint herein plaintiff alleges that the settlement is null and void, but it is apparent that it means only that it is of no effect as a determination of the amount of the misappropriations, since it does not offer to

restore the property, part of which, as noted above, appears not to have been trust property or the proceeds of trust property. Plaintiff does offer to credit the property received, at a valuation of $173,329.02, on what may be found due. I am of the view that the settlement for a portion of the misappropriations, the only portion known to exist at the time of the settlement, and on the basis of the personal liability of the wrongdoer, does not bar a suit to reclaim when it is thereafter discovered that there are further misappropriations. Recovery must, of course, be adjusted in a manner which will not result in a double relief. That plaintiff does not seek double relief is demonstrated by its offer to credit the $173,329.02 already received by it.

This court recently had occasion to consider the doctrine of election of remedies in *Perkins* v. *Benguet Cons. Min. Co.*, 55 Cal.App.2d 720, 753 [132 P.2d 70]. It is there said that in some states harsh application of the doctrine of election of remedies is avoided through viewing it as an aspect of the law of res judicata, merger, waiver, estoppel and allied doctrines, and that in California it has been declared repeatedly that the doctrine is a phase of the law of estoppel. (p. 758.) It does not appear from the complaint that it is inequitable to permit plaintiff to obtain relief for part of the misappropriations on the basis of adjustment of a personal liability (the settlement), and for the balance through following trust property. If there are circumstances of estoppel in this case, that is a matter of defense which does not arise on demurrer to the complaint, but should be raised by answer.

The allegations of the complaint and prayer seem to have been drawn without full realization of the theory on which plaintiff may recover. Plaintiff seems to be of the view that the court should determine the amount of money appropriated and the value of the property taken, and that it may have judgment for the amount thereof, and for damages in addition, payable from all property distributed to Norma Schwabacher and from the life insurance proceeds received by her. Plaintiff even includes in the complaint an allegation that the properties of plaintiff have been so commingled with the properties of Louis Schwabacher as to be impossible of segregation.

In support of its prayer for relief plaintiff cites *Noble* v. *Noble*, 198 Cal. 129 [243 P. 439, 43 A.L.R. 1235], as standing

for the proposition that where the estate is solvent and it is impossible to trace trust property, the *cestui* has a lien on the entire estate for the value of the property converted. The decision is not so broad. In that case it was held that the *cestui* was without right to a judgment based on a personal liability of the deceased trustee for the reason that no claim had been presented. Any recovery, therefore, had to be based on a theory of following trust property. The court did not hold that the *cestui* was entitled to judgment for the original value of the trust res payable from the entire estate of the trustee. The trust property originally consisted of a parcel of real property of the value of $7,500. This was exchanged for other real property, which later was sold for $3,681.14 net, deposited in the trustee's personal bank account. At his death this account was reduced to $1,430.47. There was also $462.22 in another bank account, bonds of the value of $26,112.12 and real estate of the value of $5,500. There were no creditors. The trial court gave judgment for plaintiff for $7,500, the value of the original trust res, less advances of $1,416.43 made by the trustee. On appeal the court held that plaintiff was entitled to judgment for $3,684.14, without further tracing than noted above, but not to judgment for a larger amount based on value of the original trust property. The court in effect held that the trust funds should be deemed to have been traced to the estate left by the trustee. In *Mitchell* v. *Dunn*, 211 Cal. 129 [294 P. 386], the Noble case is cited for the point that where the trustee, or his estate, is solvent, the degree of identification required is "far less" than where the trustee is insolvent and the rights of creditors are involved. (See, also, *Kobida* v. *Hinkelmann*, 53 Cal.App.2d 186 [127 P.2d 657].) The court further held in the Noble case that the personal liability of the trustee for negligent handling of the trust property, resulting in loss in value, could not be taken into consideration in the action to trace trust property.

As applied to the instant case the effect of the decision in *Noble* v. *Noble* is that plaintiff cannot recover damages arising from the alleged misappropriations. But if plaintiff can establish the allegations of its complaint it should be entitled to relief upon tracing the trust property as required by the liberal rule heretofore noted. I am of the view that plaintiff should not be deemed to have abandoned the remedy to which it may be entitled on the facts alleged because of the aver-

ment that the properties of plaintiff are impossible of segregation. That averment should not be construed as negating the possibility of tracing within the liberal rules laid down in such cases as *Noble* v. *Noble, supra.*

If the trust property is sufficiently traced to the estate of decedent, and to a distributee, circumstances may arise thereafter which would permit a judgment based on a personal liability of the *distributee,* as where the property had passed from a distributee with knowledge of the trust claim to a bona fide purchaser. But this would be something different from enforcing after distribution a personal liability of the *decedent* through making all property distributed liable to the extent of such personal liability, without any tracing at all.

The fact that plaintiff may pray for relief to which it is not entitled does not mean, at least in the absence of a special demurrer on that ground, that the complaint is insufficient to state a cause of action, where, upon the facts alleged, plaintiff is entitled to other relief. Such uncertainties may be clarified by the trial court.

I have thus considered the allegations of this complaint at some length. I believe the complaint, though far from a model of pleading, states a good cause of action that is not barred as a matter of law. If the allegations of that complaint are true (which must be conclusively presumed on this appeal) Louis stole large sums from plaintiff, he successfully hid that fact from the corporation, and the ill gotten gains so secured are now in the hands of defendant. Under the liberal rule applied in interpreting pleadings in this state, and in view of the nature of the controversy, a court should not, by a strict and technical construction, seek an interpretation to prevent the controversy from being tried. For that reason I believe the judgment should be reversed.

A petition for a rehearing was denied March 31, 1943. Peters, P. J., voted for a rehearing.

Appellant's petition for a hearing by the Supreme Court was denied April 29, 1943. Carter, J., and Traynor, J., voted for a hearing.