[Civil No. 2797. Filed April 23, 1929.]

[276 Pac. 839.]

GARDEN DEVELOPMENT COMPANY, a Corporation, Appellant, v. THE WARREN RANCH, a Corporation; H. B. HOVLAND, E. B. FRAWLEY, GEO. O. HILZINGER, Defendants-Appellees, HOVAL A. SMITH, Plaintiff-Appellee.

See Appeal and Error, 4 C. J., sec. 2853, p. 879, n. 86.
Cancellation of Instruments, 9 C. J., sec. 84, p. 1204, n. 94.
Corporations, 14a C. J., sec. 1943, p. 163, n. 85.

Mr. Chas. R. Morfoot and Mr. Arthur F. Coe, for Appellant.

Messrs. Ellinwood & Ross, Mr. John E. Sanders, and Mr. H. Mackay, for Appellees Smith and Warren Ranch.

LOCKWOOD, C. J.—This is an action by Hoval A. Smith, hereinafter called plaintiff, against the Garden Development Company, a corporation, hereinafter called the Development Company, and the Warren Ranch, a corporation, hereinafter called the Ranch Company, H. B. Hovland, E. B. Frawley and George Hilzinger, seeking a cancellation of a certain lease from the Ranch Company to the Development Company. It is alleged in the complaint that plain-

tiff is and was a stockholder in the Ranch Company, and that the lease was grossly unfair to the latter and its stockholders, and illegal. Plaintiff further alleged that the board of directors which had approved such action was dominated and controlled by Hovland, and that the Development Company was merely the latter's *alter ego,* and that plaintiff therefore brought this suit as a stockholder in the Ranch Company on his own behalf and that of stockholders similarly situated.

This action was filed by plaintiff on the first day of April, 1919. To the complaint all of the defendants answered, denying that there was any fraud, alleging that the lease was legally executed and entirely fair, and to the advantage of the Ranch Company, and that its execution was ratified by the latter. The case was not pressed to trial, and lay in abeyance until January 22d, 1927, when the Ranch Company filed an amended answer, admitting in effect all the allegations of plaintiff's complaint, and repudiating the original answer filed in 1919, praying as did plaintiff in his complaint that the lease be canceled. To this answer the Development Company pleaded the statute of limitations by demurrer and answer, and also that the lease was ratified by the Ranch Company. The matter was tried to the court, and findings of fact and conclusions of law were made, which in effect sustained practically all the material allegations of plaintiff's complaint, and judgment was rendered thereon. After the usual motion for new trial was made and overruled, the Development Company appealed.

There are some eighteen assignments of error, which may be reduced to three propositions of law: (1) That the cause of action is barred by laches and the statute of limitations. (2) That the lease in question was ratified by the Ranch Company, and that such ratification binds plaintiff. (3) That the lease

was fair and free from fraud. We will discuss these questions in their order, but that we may do so intelligently, it is necessary that we set forth as briefly as possible the facts in the case. Some of these facts are undisputed. Where there is a dispute and the evidence is in conflict, under our oft-repeated rule, we are bound by the findings of the trial court, and follow those findings.

In the year 1905 defendant Hovland and plaintiff entered into a copartnership for various business purposes. In the course thereof it seemed advisable to organize the Warren Ranch Company, under the corporation laws of the state of Arizona. Its capital stock was twenty shares, of which Hovland held eight and Smith five in their individual names, the others being held, five by James Hoatson, a director and large stockholder of the Calumet & Arizona Mining Company, one by H. B. Paull, auditor of said Mining Company, and one by T. H. Collins, an officer and director of the same. The Ranch Company became the owner of some 3,800 acres of land situated south of Bisbee, Arizona. The mining companies located in the Bisbee district were compelled to pump a large quantity of water to keep their mines from being flooded, and at that time had no use for such water, and desired to get rid of it in such a manner that it would not again annoy them. Hovland secured from several of these companies contracts calling for the delivery of this water, which he afterwards transferred to the Ranch Company, and the water was used for a number of years in irrigating the land owned by the latter. The proposition, however, was not financially a paying one, and by the year 1917 the Ranch Company was subject to a mortgage indebtedness of approximately $30,000, and in addition had a current indebtedness of approximately $20,000. At this time the board of directors of the Ranch

Company consisted of Hovland, Frawley and Paull. The Calumet & Arizona Mining Company had by various methods become the holder and owner of the mortgage indebtedness above mentioned and the reversion of the water contracts. It, by this time, desired to use the water which it had previously considered a nuisance, and offered to buy a relinquishment of the water contract held by the Ranch Company for $50,000, at the same time urging the payment of its mortgage. There was considerable correspondence between the directors and stockholders of the Ranch Company, as to what to do to settle the indebtedness, some wishing to sell the water contract to the Mining Company. Hovland, however, refused to agree to such sale. So far, there is no dispute in the facts.

In the year 1917 the Garden Development Company was organized as a corporation. Ostensibly Hovland had no connection with it, but the trial court found, and there is ample evidence to sustain such finding, that the Development Company was at all times controlled solely by Hovland; that its directors were mere dummies of his; and that he was the only person who had any financial interest therein, or exercised any independent, impartial judgment in the management of its affairs. The Development Company then made a proposition to the Ranch Company that if the latter would grant it the lease in question in this suit, it would arrange for the taking up of the mortgage held by the Mining Company. This lease was authorized at a meeting of the board of directors of the Ranch Company, held February 25th, 1919, by the vote of Hovland and Frawley, two of the three directors, Paull being absent. The first meeting of the stockholders of the Ranch Company held after the execution of the lease was on April 15th, 1919. The trial court found that the stockholders did not ratify the lease at such meeting, nor

was it discussed. Again the evidence is in conflict on this point, and we are bound by the findings of the trial court. The question of the lease did not come before any meeting of the stockholders of the Ranch Company uutil April 13th, 1921, when it was repudiated by the stockholders' meeting. Immediately after the execution of the lease, and before any stockholders' meeting had been held, and before either the Ranch Company, the Development Company, or Hovland had taken any steps to perform the conditions of the lease, plaintiff commenced his suit, and filed a *lis pendens*.

In the meantime, and dating back to 1912, plaintiff Smith had become very much dissatisfied with the conduct of Hovland in carrying on the partnership business, and in 1917 the former commenced an action in the superior court of Cochise county for a partnership accounting. Hovland removed the action to the United States district court, and it proceeded to a hearing before a referee, and in 1922 said district court rendered judgment that Hovland was indebted to the partnership in the sum of over $145,000, and that the partnership was indebted to Smith in the sum of over $180,000, and ordered that the assets of the partnership, among which were included the eight shares of Warren Ranch Company stock standing in the name of Hovland, and the five shares standing in the name of Smith, be sold for the purpose of paying the debts of Hovland and the partnership. The case was appealed, and finally affirmed by the Supreme Court of the United States in the year 1926. Thereafter the Ranch Company filed its amended answer in this suit as above set forth, and the matter proceeded in the usual course to judgment and appeal.

On this statement of facts let us consider the various legal questions arising. The first is whether the plaintiff and the Ranch Company are guilty of laches herein. Ordinarily speaking, a delay of seven

years in the prosecution of a suit would be considered laches. *Forbach* v. *Steinfeld,* 34 Ariz. 519, 273 Pac. 6. The trial court, however, found that the action had been continuously prosecuted with due and reasonable diligence. There is evidence in the record to the effect that during the trial of the Smith-Hovland case in the federal court it was orally agreed between counsel for defendant Hovland and plaintiff Smith that the trial of the present case stand in abeyance until the determination of the one in the federal court. It also appears that in the year 1920 counsel were notified by the superior court of Cochise county to appear and show reason why the action should not be dismissed for want of prosecution, and upon a showing made to the court in regard to the pendency of the action in the federal court the superior court agreed that the present action go over until the determination in the federal court. If the trial court believed this evidence, and we must assume it did, good cause was shown for a failure on behalf of plaintiff Smith to press the present case to trial. The same is true in regard to the filing of an amended answer by the Ranch Company. Control of this company apparently passed from Hovland to Smith some time before the spring of 1921. Under the circumstances as set forth in the above evidence, we think the Ranch Company was also excusable for not showing its changed position in its answer until the determination of the suit in the federal court.

The second question is as to whether or not the lease was ratified by the stockholders of the Warren Ranch Company. It is strenuously contended by the Development Company that at the stockholders' meeting on April 15th, 1919, there was a ratification. The evidence on this point is susceptible of two interpretations. The trial court from its finding evidently believed that there was no ratification, and its judgment on inferences from the facts is as controlling as its

conclusions upon the facts themselves. *Moeur* v. *Farm Builders Corporation, ante,* p. 130, ·274 Pac. 1043. The only other ratification claimed by the Development Company is that at various times individual stockholders approved the lease. The trial court's finding upon this point was also adverse to the Development Company, and there is evidence in the record to support such finding. On April 13th, 1921, the Ranch Company officially repudiated the lease and notified the Development Company to that effect. We have already held the Ranch Company was not guilty of laches in failing to amend its answer, and since the court has found on sufficient evidence that the Ranch Company had never received anything from the Development Company of value pursuant to and in performance of the lease, a ratification cannot be claimed on the ground of benefits received.

We come, then, to the vital issue of the case. Was the lease, under all the circumstances appearing in the evidence, of such a nature that as a matter of law it is voidable at the suit of plaintiff? There are three rules prevailing in regard to the validity of transactions wherein the director of a corporation participates and has a personal interest therein. The first is that all such, regardless of their fairness, are subject to rescission at the suit of any stockholder. *Morgan* v. *King,* 27 Colo. 539, 63 Pac. 416; *Transvaal Lands Co.* v. *New Belgium Land & Development Co.* (1914), 2 Ch. Div. 488–503; *Purchase* v. *American Safe etc. Co.,* 81 N. J. Eq. 344, 87 Atl. 444. The second is that unless the transaction was authorized by the majority of a wholly disinterested quorum the transaction will be set aside. In other words, if the vote of the interested director was necessary to constitute a quorum or to pass the resolution, the transaction may be voided, regardless of its fairness. *Curtin* v. *Salmon River etc. Co.,* 130 Cal. 345, 80 Am.

St. Rep. 132, 62 Pac. 552; *Sacajawea Lumber etc. Co.* v. *Skookum Lumber Co.,* 116 Wash. 75, 198 Pac. 1112; *In re Webster Loose Leaf Filing Co.,* (D. C.) 240 Fed. 779–785. The third rule, which has been approved by this court, is that the transaction will be closely scrutinized and will be set aside upon the slightest evidence of unfairness. *Dragoon Marble etc. Co.* v. *McNeish,* 28 Ariz. 96, 235 Pac. 401; *Phoenix Title & Trust Co.* v. *Alamos Land & Irrigation Co.,* 24 Ariz. 499–506, 211 Pac. 570–572.

Let us examine the lease and see whether it falls within the inhibition set forth in the Dragoon Marble Co. case. Therein we held, quoting from the case of *Marr* v. *Marr,* 73 N. J. Eq. 643, 133 Am. St. Rep. 742, 70 Atl. 375, that:

"A director occupies a position of trust, or agency, for his company of such a character that all dealings between him and the company, where his interest is opposed to that of the company, will be regarded with jealousy and suspicion and subjected to the closest scrutiny, and not sustained against the stockholders unless they are consistent with the utmost good faith and fair dealing on the part of the director."

In the case at bar the trial court has found that the Development Company was Hovland's *alter ego.* He, as a director in the Ranch Company, was dealing with himself in effect. Under the lease in question the Ranch Company surrendered the use of its most valuable asset, the water, without which its agricultural operations must cease entirely, for a term of twenty-five years, and agreed to pay for the maintenance of the flumes and ditches which carried the water. In exchange therefor it gained only one-eleventh of the stock of the Development Company, and a promise that the latter would pay the taxes on the leased land. All other benefits were merely speculative and at the discretion of the Development Company. If any

lands were subleased, the Ranch Company was to receive fifty per cent of the rental collected, but there was no obligation on the Development Company to sublease a single acre. The Ranch Company was to have the use of any of the water not required by the Development Company, but the latter had the right to use all of the water. If these were all the benefits to be derived by the Ranch Company through the lease, we think the trial court was amply justified in finding that the lease was fraudulent and unfair, and that its performance would not be to the advantage of the Ranch Company and its stockholders, but would result in great loss to them, and a corresponding benefit to the Development Company.

But it is urged that as a further consideration of the lease the Development Company procured a loan for the Ranch Company which enabled it to pay off a mortgage on its property which was about to be foreclosed, and thus preserved the entire *corpus* of the property. The loan in question was made by a third party, at the instance of Hovland, to the Ranch Company, and was secured by a mortgage on the property of the latter, subject to the terms of the lease aforesaid. If, as a matter of fact, the loan was a *bona fide* one from a third party, there can be no doubt that such a lender would have been even more willing to make the loan on the ranch property unencumbered by the lease, and the latter was not necessary to secure the loan. If, on the other hand, as contended by plaintiff, the loan, though nominally made by a third party, was in effect and in truth made by defendant Hovland in order to secure the lease, the transaction is natural and understandable. But in so doing Hovland was violating his duty as a director in the Ranch Company. We are of the opinion that the evidence fairly sustains the conclusions of the trial court that the lease was unfair to the stockholders of the Ranch Company, and therefore,

even under the lenient rule adopted by this court in the Dragoon Marble Co. case, *supra,* it was properly canceled.

Such being the case, the judgment of the trial court appealed from was correct, and it is hereby affirmed.

McALISTER and ROSS, JJ., concur.