[Civil No. 4195. Filed November 25, 1940.]

[107 Pac. (2d) 380.]

J. C. KENTON, Appellant, v. C. M. WOOD, MRS. R. T. FRANKLIN, CHARLES K. VICKERY, LUCILLE WOOD and WOOD'S PHARMACY, INC., Appellees.

Mr. W. L. Barnum and Mr. Norman S. Herring, for Appellant.

Messrs. Gust, Rosenfeld, Divelbess, Robinette & Coolidge, for Appellees.

LOCKWOOD, J.—This is an action by J. C. Kenton, hereinafter called plaintiff, as a minority stockholder of Wood's Pharmacy, Inc., hereinafter called the corporation, against C. M. Wood, hereinafter called defendant, Mrs. R. T. Franklin, Charles K. Vickery, Lucille Wood, and the corporation.

The amended complaint, upon which the case was tried, set up three causes of action. The first was dismissed without prejudice. The second cause of action alleged that plaintiff and defendant engaged in the drug business as partners, but that afterwards the business was incorporated and defendant induced plaintiff to transfer to one Virgil Brown some 200 shares of stock of the corporation, which made defendant the majority stockholder. Thereafter defendant acted as president and managing director of the corporation, and managed it as though it were his own private business, illegally applied large amounts of the corporation funds to his own private affairs, and drew excessive salaries for his services all the time. Plaintiff, therefore, as stockholder brought his second cause of action for an accounting by defendant for the funds of the corporation and his use thereof. The third cause of action set up the control of the corporation by defendant, excessive withdrawal of the assets by defendant for his own personal use, a conspiracy between defendant, his wife, Mrs. R. T. Franklin, and Charles K. Vickery to oust plaintiff from any participation in the corporate affairs and deprive him of a fair share of the profits and dividends by (a) the purchase by defendant of Mrs. Franklin's stock in the corporation, which was to be paid for out of its funds, (b) the ousting of plaintiff from his position as an

employee of the corporation, and (c) the illegal fixing of the salary of defendant in 1935. The prayer was for an accounting and audit, a receivership and that the Franklin stock should be declared to belong to the corporation and not to defendant individually.

After various preliminary matters were disposed of, the case came on for trial on the merits, before the court sitting without a jury. Oral testimony was taken for some four days and much documentary evidence introduced, after which the case was submitted. The court made findings of fact and rendered judgment thereon. This judgment covered the issues very fully, and was in most respects adverse to the various contentions of plaintiff, and he has brought the case before us for review.

There are a number of assignments of error by plaintiff, but we think that substantially they raise but one question for our decision, and that is whether there is sufficient evidence to support the findings and judgment. In considering questions of this nature we have repeatedly laid down the following rules. Evidence will be taken in the strongest manner in favor of the appellee and in support of the court's findings. *DeMund Lbr. Co.* v. *Franke,* 40 Ariz. 461, 14 Pac. (2d) 256. Where evidence is in conflict, this court is bound by the findings of the trial court. *Blackford* v. *Neaves,* 23 Ariz. 501, 205 Pac. 587. A judgment will not be disturbed when there is any reasonable evidence to support it. *Wright* v. *Young,* 20 Ariz. 46, 176 Pac. 583. The following facts are not in serious dispute.

Plaintiff is the father-in-law of defendant. In 1919 the two parties purchased a drug store in Glendale, Arizona, as a partnership venture. Defendant was a registered pharmacist and took active charge of the partnership from the beginning. Plaintiff had been a banker by profession up to about January, 1925, when he went to work in the office of the county trea-

surer of Maricopa county, being employed there until December, 1928. In January, 1925, the partners decided that a corporation should be formed of the business, and this was done. At the first stockholders' meeting shares were issued as follows: Defendant, 620 shares; plaintiff, 430 shares; Virgil Brown, who was an employee of the business, 200 shares; and Virginia C. Wood, 10 shares, the latter being the daughter of defendant and granddaughter of plaintiff. Defendant, plaintiff and Brown were elected as the board of directors, while defendant was president, plaintiff vice-president, and Brown secretary-treasurer of the corporation. The by-laws provided that the president had the general powers of supervision and management of all the affairs of the corporation. In March, 1925, the corporation purchased a drug store in Peoria, Arizona; in February, 1926, it purchased another one in Wickenburg, Arizona, and in 1936 a second drug store in Wickenburg, so that at the date of the trial it was operating four drug stores. At some time after plaintiff left the employ of the county treasurer in 1928, he was employed by the corporation in its Glendale store, where he worked until December, 1934. Up to this time all of the stockholders and directors of the corporation were in accord and no personal differences arose in the corporate affairs. Regular annual meetings were held at which the same officers and directors were duly elected. In December, 1934, defendant discharged plaintiff, who was at that time employed in the Glendale store at the rate of $100 per month. At the annual election of directors and officers on February 14, 1935, defendant, his wife, and Charles K. Vickery were chosen as directors, plaintiff being dropped. The stockholders also chose defendant as president, his wife as vice-president, and Vickery as secretary-treasurer of the corporation. On March 12th the board of directors, by a single reso-

lution, fixed the salary of the president at $350 per month, and that of Vickery as secretary-treasurer at $160 per month. This was the first time during the operation of the corporation that any official action had been taken by the board fixing the salary of any officer or employee. From that time on defendant remained in entire control of the affairs of the corporation, plaintiff having no connection therewith except by the medium of various lawsuits which he brought.

The charges which plaintiff made in the complaint were, in substance, as follows: In the second cause of action he alleged that defendant had diverted to his personal use a very large sum of money belonging to the corporation, and in the third cause of action that he had purchased certain stock of the corporation with the funds of the corporation, had discharged plaintiff from any employment by the corporation, and had generally mismanaged its affairs so that it was about to become insolvent.

The evidence is voluminous, and it would be of little value as a precedent in future cases for us to analyze or even to summarize it all. We confine ourselves, therefore, to a discussion of the questions in issue which are important as precedents from a legal standpoint, merely stating our conclusions on other matters.

The findings of the trial court are either sustained by an overwhelming weight of the evidence or else there is a sharp conflict in the testimony upon the particular point. Under the rules above stated, in either case we must hold that these findings are correct. So far as the undue withdrawal of assets by defendant is concerned, the major charge is that he has failed to account for $4,885.54 received by the corporation. The court found that its records showed there was this amount of money which was not properly accounted for, but that there was insufficient evidence to show an

actual loss to the corporation, or that defendant Wood had misappropriated the money or caused any loss.

It was urged most strenuously by plaintiff that a fiduciary relation existed between him and defendant, and for that reason the rule applicable to such relationship that every act of the trustee is jealously regarded and that the burden is upon him to show that it was proper and in good faith applies to the present case.

 This is an action by a minority stockholder and director to recover for the benefit of the corporation money which he alleges was misapplied by a co-director. While defendant was general manager of the corporation during the time in which it was contended there was a discrepancy in its accounts, plaintiff was also a member of its board of directors, and such board had both the ultimate authority and responsibility for the management of the corporation. It is true that directors are trustees for the benefit of the stockholders of a corporation, but there is no fiduciary relation between two directors as such, and since this was not an individual action between plaintiff and defendant to recover money which it was alleged that defendant, as trustee for the benefit of plaintiff, owed the latter, we think family relationship between them as individuals cannot create a fiduciary relation between them in the present case.

 We have examined the evidence in regard to the alleged misappropriation of money above referred to. It appears that the books of the corporation were in a very chaotic condition during the period in which the alleged discrepancy occurred, that they were subject to the inspection of plaintiff and defendant equally, and that many of them have disappeared. In fact, the alleged discrepancy must depend almost entirely upon certain income tax returns. The judgment of the trial court as to the inference to be drawn

from evidence which is susceptible of two different interpretations will not be disturbed by this court. *Garden Development Co.* v. *Warren Ranch,* 35 Ariz. 254, 276 Pac. 839; *First National Bank* v. *Osborne,* 39 Ariz. 107, 4 Pac. (2d) 384; *Collins* v. *Collins,* 46 Ariz. 485, 52 Pac. (2d) 1169. Further than that, so far as this particular point is concerned, we think the cross-assignment of error of defendant that plaintiff was guilty of laches is well taken. Plaintiff did not occupy the position of an ordinary stockholder, who can only have an inspection of the records of the corporation by a special effort and who is under no duty to inspect them. He was a director charged with the duty of guarding the interests of the corporation and, there-fore, of examining all of the acts of its officers and its records. We think under these circumstances that a delay of approximately eight years by the plaintiff before he brought his action was laches, if, indeed, the statute of limitations had not actually run. *Guerin* v. *American S. & R. Co.,* 28 Ariz. 160, 236 Pac. 684; *Pourroy* v. *Gardner,* 122 Cal. App. 521, 10 Pac. (2d) 815. The trial court on the whole record was justified in holding that the corporation could not re-cover from defendant at the suit of plaintiff the $4,885.54 which was not strictly accounted for in its records.

The next question is as to the salary voted to defendant Wood by the directors' meeting in 1935. Plaintiff appeals to the rule laid down in *Martin* v. *Santa Cruz Water Storage Co.,* 4 Ariz. 171, 36 Pac. 36. In that case we held when a board of directors adopts a resolution for the payment of a salary to one of the directors, and the vote of such director was necessary to carry the resolution, that it was voidable and the director could not recover from the corpora-tion on the basis of contract for the salary voted. We reaffirm this rule, but it has always been the law that

when an officer or director of a corporation renders special service to it over and beyond what his ordinary duties require, he is entitled to reasonable compensation for the services actually rendered. In the present case the trial court found on sufficient evidence that the services rendered to the corporation by defendant during the period in question were reasonably worth the sum of $350 per month at the time they were rendered. He was, therefore, entitled to retain the compensation which he had drawn, even though it may have been drawn originally on the theory of contract rather than *quantum meruit*.

 The next question is as to the purchase of what is known as the Franklin stock. The court found that this purchase was made in good faith, without any fraud on the part of defendant, and there is evidence in the record which would sustain such a finding. Since that is true, its judgment on this point was legally correct.

 We next consider the discharge of plaintiff by defendant. In the absence of a specific contract of employment, the managing authority of a corporation has the absolute power to discharge an employee at any time, and the mere fact that the employee happens to own stock in the corporation does not entitle him to continue in its employment. Plaintiff urges that the reason for his discharge was the desire of defendant to secure an extra salary for himself. Defendant claims that he discharged plaintiff because his services to the corporation were not worth the salary he was being paid. We think since the absolute power of discharge existed, the reasons therefor were immaterial.

It is obvious from the entire record that this case presents the unfortunate, but oft-recurring situation of a family quarrel. It may be, as urged by counsel for plaintiff in their argument, that there are moral

equities in his claims, but we can only decide the case upon the legal principles which apply to the facts as shown by the record.

There are a number of other findings and portions of the judgment which we have considered but which we need not discuss in detail because they all depend upon the same propositions, to wit, whether there is evidence in the record which, if believed by the trial court, would sustain the findings, and whether the judgment rendered was correct if the findings were true. Upon the whole case, we think all of the findings were sustained by the evidence, and the conclusions of law and judgment rendered necessarily followed from these findings.

The judgment is affirmed.

ROSS, C. J., and McALISTER, J., concur.