### AIR TRAFFIC & SERVICE CORP. v. FAY.

No. 11007.

United States Court of Appeals

District of Columbia Circuit.

Submitted Jan. 22, 1952.

Decided March 27, 1952.

to the questions presented as the appellant desires the court to read."

Max Tendler, Washington, D. C., submitted on the brief for appellant.

No appearance for appellee.

Before PRETTYMAN, BAZELON and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This litigation arises from a falling out between the promoters of a new corporation.

On October 20, 1947, Edward A. J. Fay and Max Tendler signed a promoters' agreement looking to the formation of a company to be called Fay Traffic and Service Corporation, which would render services to the transportation industry. One portion of the agreement recited:

"Edward A. J. Fay will contract with the corporation to act as General Manager and tariff consultant for a period of not less than one (1) year at an annual salary of Ten Thousand Dollars ($10,000.00), renewable from year to year at the option of the corporation."

Shortly thereafter the company was incorporated in Delaware. Stock in the new company was first subscribed for, and the first directors' meeting was held, in April 1948. Both Fay and Tendler were present at the meeting, but the subject of compensation for the executives apparently was not raised. The directors next met on July 10, 1948, Fay and Tendler again being in attendance. The following resolution was there adopted:

"Resolved, That Edward A. J. Fay as President of the Fay Traffic and Service Corporation and Max Tendler as Treasurer of the Fay Traffic and Service Corporation shall each be paid an annual salary of $10,000.00, commencing July 16, 1948."

Up to this time, Fay had been in the employ of an airline agency in New York. On July 16, 1948, he left that job, moved to Washington, and began to devote full time to the new company. Disagreements thereafter arose between Fay and Tendler, and on October 31, 1948, Fay resigned from

the company's employ.[1] Some months later, he sued the corporation, alleging that it had agreed to pay him a salary of $10,000.00 as General Manager, and that there was due him for the period October 31, 1947, to October 31, 1948, the net sum of $7,100 (i. e. $10,000 less $2,900 which had been paid him as President for the period from July 16, to October 31, 1948). After a trial before the District Court, sitting without a jury, Fay recovered a judgment in the requested amount, based on the court's finding that the company had contracted to pay him $10,000, as President and for his services, during the year beginning October 31, 1947. This appeal followed.

Cases of the present sort are of frequent occurrence. When a new company is being organized, one of the most important tasks of its promoters is to obtain some assurance of good executive management. Later, if the scheme falls through, the executive who became a party to the arrangement may resort to litigation to obtain compensation. If the disappointed executive sues the promoters on an agreement he has made with them, his recovery will be largely governed by the usual standards of contract law, with its primary emphasis on the intention of the parties. But if he chooses to sue the corporation, special considerations come into play. The possible interests of creditors, as well as of actual or potential stockholders, have led to some conservatism in imposing liability against the corporate assets. One consequence of this attitude is the established rule that a promoters' contract is not, as such, binding on the new corporation, but must be ratified and adopted by it.

In the instant case, Fay seeks to recover from the company a fixed salary for a fixed term, relying squarely on the promoters' agreement of October 20, 1947. The corporation never expressly or formally ratified and adopted that contract. The District Court, however, concluded that the promoters' agreement had been "accepted by and ratified by the corporation after its organization and it became legally bound thereby."

In some situations, it may no doubt be properly held that a promoters' contract has been ratified and adopted by implication or estoppel. This is particularly true where an obligation running to the corporation is carried out, and the corporation accepts performance under circumstances making it inequitable to allow the company thereafter to escape the provisions of the promoters' contract.[2] The situation before us, however, in no way fits this description. Fay did not begin his active service with the company until July 16, 1948. Prior to that time he was still working in New York for another concern. His visits to Washington were on occasional week-ends, rather than on business days. He was consequently unavailable to act as "General Manager and tariff consultant" for the company, as provided by the agreement.

The services which Fay performed for the company during this preliminary period, and which the trial court evidently viewed as performance under the promoters' contract, can be fairly described as promotional work. While in New York he took prospective customers out to lunch and dinner, arranged for insignia to be designed for the company, and the like. These activities were not those of a "General Manager and tariff consultant," and they were presumably intended to be compensated by the block of stock (having a par value of $5,000) which Fay received for "promoters' services." He allowed the company to use his name, but that has little bearing on the question now before us. Under the law of Delaware, which we apply in this case, much more must be shown in the way of ratification and adoption than the plaintiff here is able to show.[3] Not only was the

1. Subsequently, the company change its name to Air Traffic & Service Corporation.

2. See, for example, McArthur v. Times Printing Co., 48 Minn. 319, 51 N.W. 216. Compare, however, the cases cited in footnote 3, infra, applying Delaware law.

3. Stringer v. Electronics Supply Corp., 23 Del.Ch. 79, 2 A.2d 78; Kenyon v. Holbrook Microfilming Service, 2 Cir., 155 F. 2d 913. On the question of the applicability of the law of the state of incorporation, see Mayflower Hotel Stockholders

promoters' agreement not adopted by the company; it was in fact modified and superseded by the resolution of July 10, 1948. Fay voted in favor of this resolution in his capacity as a director, and he cannot now disavow it as an individual.[4] The resolution provided for payments only after July 16, 1948, and these were made. We must conclude that the judgment against the corporation cannot be rested on the provisions of the promoters' contract.

■ The trial court found that "on October 31, 1947 the plaintiff assumed his duties as President of said corporation. * * *" The legal and factual foundation of this finding is not clear.[5] But even assuming that Fay was "President" on some *de facto* or *de jure* basis as early as October 1947, and performed services as such, that would not of itself obligate the company (under Delaware law) to pay him $10,000 per annum, or any sum at all.[6] It is essential to the proper functioning of a corporation, large or small, that the compensation of its officers be fixed by a clearly drawn contract, fairly negotiated and properly adopted before the services are rendered. The law of Delaware permits few, if any, exceptions to this principle;

its courts have held that an officer who has no express contract with the corporation cannot sue in *quantum meruit* for the value of his services.[7] But even were an action in *quantum meruit* an appropriate means for securing compensation for the services Fay rendered the company prior to July 16, 1948, that is not the theory of Fay's present suit, nor has he laid a foundation for relief on any such basis.

■ True, it is sometimes appropriate for courts to disregard corporate forms, and to adjust the equities between individuals as if the corporate device had not been employed. Cf. Pepper v. Litton, 308 U.S. 295, 311, 60 S.Ct. 238, 84 L.Ed. 281. In re Clarke's Will, 204 Minn. 574, 284 N.W. 876. That approach, if employed here, would leave the parties as they stand. On any equitable basis, Fay is not entitled to recover from Tendler, by resort to their jointly-owned pool of assets, a fixed salary for the period prior to July 16, 1948.[8] That was the date when Fay was first available on a full-time basis and the date which they agreed was to be the time of "commencing" payment. Tendler testified that Fay never asked for any pay prior to the July 1948 directors' meeting. Fay's testimony

---

Protective Committee v. Mayflower Hotel Corp., 89 U.S.App.D.C. 171, 193 F.2d 666, at page 668, as well as the Kenyon case, just cited.

4. Such a resolution, when accepted by the officer or employee, is the practical equivalent of a contract. See 2 Fletcher, Cyclopedia of Corporations (Perm.Ed.) § 431; Washington and Rothschild, Compensating the Corporate Executive 267 (1951).

5. Fay did testify to that effect. (App. 17) But the basis of his testimony is uncertain. In Delaware, the president of a corporation is ordinarily elected by the directors. Del.Corp.Law § 10; Rev.Code Del. § 2042 (1935). Here, the first meeting of the board did not occur until April 26, 1948. Fay evidently meant that he regarded himself as head of the company, and helped promote it, from the beginning. The District Court further found that "by the terms" of the promoters' agreement, Fay was to act as "President." That finding is clearly erroneous, as can be seen by reference to the quotation from the agreement given in the text.

6. Lofland v. Cahall, 13 Del.Ch. 384, 118 A. 1; Washington and Rothschild, op. cit. supra, note 4 at 242. It is immaterial in this regard whether or not the corporation was "doing business" during the period prior to July 16, 1948, or whether or not it rented office space or made other expenditures during that time.

7. Lofland v. Cahall, supra, note 6; Finch v. Warrior Cement Corp., 16 Del.Ch. 44, 141 A. 54. Consult 5 Fletcher, Cyclopedia of Corporations (Perm.Ed.) § 2113.

8. Of course, if Fay could show some breach of a fiduciary relationship between himself and Tendler, or some breach of the terms of their written contract, there might well be basis for an action against Tendler. Cf. Stringer v. Electronics Supply Corp., supra, note 3; McEachin v. Kingman, 64 Ga.App. 104, 12 S.E.2d 212; Home News, Inc. v. Goodman, 182 Md. 585, 35 A.2d 442. But no such cause of action is alleged, and Tendler is not even a party to the present suit.

was not to the contrary. The evidence, taken as a whole, suggests that the parties were acting in good faith; that the business was slow in getting started, largely because full activity could not begin until Fay had left his New York position; and that when the resolution of July 10, 1948, was adopted it expressed a reasonable and fair solution, and one agreeable to both parties, of the problem of Fay's compensation.

For these reasons, the judgment of the District Court must be reversed.