459 P.2d 107

**Robert ONG HING, Appellant,**

v.

**ARIZONA HARNESS RACEWAY, INC., an Arizona corporation, James J. Dunnigan, James J. Dunnigan, Jr., James G. Wells, Willard W. Ward and Burr Sutter, Appellees.**

**No. 1 CA–CIV 430.**

Court of Appeals of Arizona.

Division 1.

Department B.

Sept. 24, 1969.

Rehearing Denied Oct. 20, 1969.
Review Denied Nov. 18, 1969.

**382**

Hill & Savoy, by John E. Savoy, Stockton & Hing, and William J. Knudsen, Phoenix, for appellant.

Snell & Wilmer, by Burr Sutter, Phoenix, for appellees.

JACOBSON, Judge.

The ubiquitous appeal from a judgment granting a motion for summary judgment is presented to this court to determine whether any material fact issue was raised in the Superior Court which would preclude the granting of such a motion.

Plaintiff-appellant ROBERT ONG HING, an attorney at law, filed suit in Superior Court of Maricopa County, against Defendants-appellees, ARIZONA HARNESS RACEWAY, INC., an Arizona corporation, and JAMES J. DUNNIGAN, JAMES J. DUNNIGAN, JR., JAMES G. WELLS, WILLARD W. WARD and BURR SUTTER, the individual defendants comprising the Board of Directors of Defendant corporation.

The Superior Court of Maricopa County granted summary judgments to Defendants on all counts of Plaintiff's complaint except for that portion of Count II praying for reimbursement for legal services rendered to Defendant corporation prior to Plaintiff's termination as counsel. Counsel have stipulated that the portion of Count II referred to above be continued pending a determination of the other matters on appeal.

■ In a ruling on a motion for summary judgment, the Court must view the facts in evidence most favorable to the party opposing the motion and give such party the benefit of all favorable inferences that may be drawn from the evidence. Hersey v. Salt River Valley Water Users' Association, 10 Ariz.App. 321, 458 P.2d 525 (Sept. 15, 1969). It appears, however, that most of the facts presented here are not in dispute and we are called upon to determine whether the legal conclusions drawn therefrom negate any material fact issue.

Plaintiff was employed in early May, 1961, by the original incorporators of Arizona Harness Raceway, Inc. to perform legal services in the formation, organization and incorporation of Defendant corporation. Pursuant to that employment, Plaintiff rendered the necessary legal services which culminated in the issuance of articles of incorporation to Defendant corporation on June 7, 1961. Prior to the issuance of articles of incorporation the two original incorporators entered into a pre-incorporation agreement, dated June 5, 1961, the pertinent portions of which provided that Plaintiff was to be granted an option to purchase a block of stock of Defendant corporation at par and was to be retained by Defendant corporation as general counsel at a reasonable retainer to be agreed upon between the corporation and Plaintiff.

The first meeting of incorporators was held on June 13, 1961, at which time Willard W. Ward and H. B. Pixley, the original incorporators, named five persons to serve as directors of the corporation, namely Ward, Pixley, the Plaintiff, Stan Adams and L. S. Shawler. By-laws were adopted at a meeting of the Board of Directors on June 14, 1961, and on June 15, 1961, the five directors adopted a reso-

lution, the material portion of which provided:

"RESOLVED: That the corporation be authorized to issue in trust 240,000 shares of common stock for the benefit of H. B. Pixley, 240,000 shares of common stock for the benefit of Willard W. Ward and 120,000 shares of common stock for the benefit of Robert Ong Hing. The beneficiaries will be permitted to vote the shares, but no share will be distributed by the trustee to said beneficiary until the sum of $1.10 per share is paid to said trustee. Upon the failure to release said shares by the payment of said price of $1.10 per share within 10 years, the trust shall be terminated and the shares returned to the corporation."

It is agreed by counsel that this resolution granting Plaintiff a stock option was in lieu of payment to him for legal services in forming the Defendant corporation. The authorized capital stock of Defendant corporation at this time was three million shares.

At the June 13, 1961, Board of Directors Meeting, the corporation was authorized to enter into ten-year employment agreements with Pixley, Ward and the Plaintiff. On October 19, 1961, pursuant to this resolution, an employment agreement was executed by the Plaintiff and Defendant corporation employing Plaintiff as assistant secretary of the corporation for a period of ten years, at a salary of $50.00 per month. The agreement further provided "it is hereby agreed that no specific services are required of (Plaintiff) for the above salary, but (Plaintiff) will, upon request of (Corporation) be custodian of the minute book of the corporation".

Plaintiff, after formation of the corporation, continued to act as its legal counsel until January, 1963.

Following the corporation's coming into existence, control thereof passed to Defendant, JAMES J. DUNNIGAN, who obtained assignments of the Ward and Pixley stock options. On May 27, 1963, a new Board of Directors of Defendant corporation rescinded the stock options granted by the resolution of June 15, 1961, and further rescinded the contract of employment of Plaintiff as assistant secretary. This action was ratified by the stockholders on August 3, 1963. It appears that Plaintiff was never paid any monies under his contract of employment as assistant secretary, nor was he paid for his services as attorney for the corporation following its formation. Additional facts will be supplied as they are deemed necessary.

The issues presented to this court arising out of the trial court's granting of motion for summary judgment are as follows:

1. Is a resolution granting to directors a stock option valid where the directors voting on the resolution are personally interested therein and are necessary to constitute a quorum of the Board? Further was the stock option void as being granted without consideration and in violation of Article XIV, Section 6 of the Arizona Constitution A.R.S.? (Count I of Plaintiff's complaint).

2. Was the agreement to retain Plaintiff as legal counsel of the corporation and was his employment as assistant secretary void for lack of consideration and the personal interest of a director? (Count II of Plaintiff's complaint).

3. Are corporate directors, acting as such, individually liable for inducing a breach of a corporate contract? (Count III of Plaintiff's complaint).

## STOCK OPTION

Three grounds are urged by the appellees as justification for recision of the stock option granted to Plaintiff, all or any one of which, if valid, would make the option void and therefore its recision no basis for complaint. These may be summarized as (1) the personal interest of the directors voting for the resolution, (2) lack of consideration, and (3) violation of Article XIV, Section 6, of the Arizona Constitution.

*Personal Interest of the Directors*: The Defendants contend that a resolution of a corporation, passed by directors who have a personal interest in that resolution and who are necessary to constitute a quorum voting on the resolution, is void at the option of the corporation without regard to fairness. Plaintiff on the other hand agrees that such a resolution is voidable, but only upon a showing that the resolution was unfair to the corporation. The Plaintiff thus contends that unfairness being a material disputed fact, a motion for the summary judgment will not lie.

The rule in Arizona that summary judgment can be granted only when no genuine issue of material fact exists, is so well settled that citation in support thereof seems superfluous.

Arizona has on several occasions passed on transactions where a director's personal interest was adverse to his corporation. In the early case of Martin v. Santa Cruz Water Storage Co., 4 Ariz. 171, 36 P. 36 (1894), three members of the Board of Directors voted a salary to the secretary who was also one of the three directors. The Court held that all transactions between the director of a corporation and the corporation where a personal interest of the director was present "are voidable without regard to the fairness or honesty of the act (cases cited) and so a director of a corporation cannot vote himself a salary." 4 Ariz., at 175, 36 P. at 37.

Thirty-one years later the Arizona Supreme Court rendered its opinion in Dragoon Marble & Mining Co. v. McNeish, 28 Ariz. 96, 235 P. 401 (1925) in a case involving the purchase by a director of his corporation's assets at judicial sale. The Court quoting another case, [Twin-Lick Oil Co. v. Marbury, 91 U.S. 587, 23 L.Ed. 328] with approval, held that " 'a director occupies a position of trust, or agency, for his company of such a character that all dealings between him and the company, where his interest is opposed to that of the company, will be regarded with jealousy and suspicion and subjected to the closest scrutiny, and not sustained against the stockholders, unless they are consistent with the utmost good faith and fair dealing on the part of the director.' " 28 Ariz., at 109, 235 P. at 405.

The next Arizona Supreme Court case would seem to settle the issue as to whether fairness is a test in the personal dealings by a director with his corporation. The Honorable Justice Lockwood, in the case of Garden Development Co. v. Warren Ranch, 35 Ariz. 254, 276 P. 839 (1929), speaking for the Court noted that three rules are recognized in such a situation: (1) That the transaction is void without regard to fairness, (2) that the transaction must be approved by a wholly disinterested quorum, regardless of fairness, and (3) that the transaction will be closely scrutinized and will be set aside upon the slightest evidence of unfairness. Justice Lockwood adopted the third test as being the law in the State of Arizona. This rule was followed in Monterey Water Co. v. Voorhees, 45 Ariz. 338, 43 P.2d 196 (1935), an action where the Board of Directors was completely dominated by the original incorporator who was also a member of the Board and which voted him a salary of $200 per month for six to eight hours per month labor. Although the Court quotes with approval from Martin v. Santa Cruz Water Storage Co., supra, the Court found the salary was manifestly unfair.

In 1937, in the case of Karns v. Industrial Commission, 50 Ariz. 466, 73 P.2d 104, the Court used language which tends to support appellees' position that the employment and salary of a director must be approved by an independent and unbiased majority of the directorate. The facts in this case indicate that the Board of Directors consisted of five members, only two of whom voted on the salary for the director—one being the director involved. The language of the court, which supports appellees' contention, in our opinion, was directed specifically to this factual situation. In Kenton v. Wood, 56 Ariz. 325, 107 P.2d 380 (1940) the Court again looked at the question of

directors' salaries and, reaffirming Martin v. Santa Cruz Water Storage Co., supra, held that "when a board of directors adopts a resolution for the payment of a salary to one of the directors, and the vote of such director was necessary to carry the resolution, that it was voidable and the director could not recover from the corporation on the basis of contract for the salary voted." 56 Ariz., at 332, 107 P.2d at 383. No mention was made of fairness, however the Court did hold that such a director was entitled to recover in quantum meruit and allowed the salary to stand.

The last pronouncement of the Arizona Supreme Court on this issue was in the case of Tovrea Land and Cattle Co. v. Linsenmeyer, 100 Ariz. 107, 412 P.2d 47 (1966), where the Court in a lengthy opinion reviewed the law applicable to a director dealing with his company, his interest being adverse thereto, and held that such transactions will be closely scrutinized, but will be set aside only if they are unfair to the corporation.

█ Appellees recognize the rule enunciated by *Tovrea,* but urge that since the option granted to the Plaintiff in this case was in lieu of compensation for services performed, a more stringent rule is applied, i. e., void without regard to fairness. We have reviewed closely the cases cited by Appellee in support of this contention and find some language to support such a contention. However, it appears to us that far more harm may result to a corporation, its creditors and stockholders, by dealings of a director with his corporation in fields other than the authorization of a payment of a salary or compensation, as, for example, in the Garden Development Company case where the errant director assigned the only valuable asset of his corporation to another corporation entirely controlled by him. Logically, the more stringent rule should apply, if at all, to these types of transactions—this, however, the Arizona Supreme Court has failed to do. Logic also supports the fairness rule. Without such a restriction, the Court is somewhat at a loss to know how a small,

closely held corporation could function or exist without engaging in various legal subterfuges or applying narrow exceptions based upon legal fictions. Be that as it may, we are bound by the holding in Tovrea Land and Cattle Company v. Linsenmeyer, supra, and therefore hold that when a director deals with his corporation, and his interest is adverse to that of the corporation, such transactions will be closely scrutinized, but will only be set aside if they are unfair to the corporation.

█ We have analyzed the stock option granted here and express concern over the fairness of an instrument which gives control over the affairs of the corporation to three individuals for a period of ten years without the payment by them of any monies for that privilege. We are not, however, prepared to say that as a matter of law the stock option is unfair, this being a matter for the trier of facts, taking into consideration the circumstances surrounding the granting of the option at the time. In this regard, the burden is upon the Plaintiff to prove the fairness of his transactions with the corporation. Tovrea Land and Cattle Company v. Linsenmeyer, supra.

*Lack of Consideration*: The Appellees next attack the stock option on the ground that no consideration existed for the granting of the option to Plaintiff. This is based on the argument that inasmuch as preincorporation contracts are not binding on the corporation, services rendered prior to the formation of the corporation cannot form a basis for consideration.

█ The general rule is that until a corporation has come into being, it cannot contract as a corporation. Since it cannot contract and, for that reason, cannot appoint an agent to contract in its behalf, it follows that a corporation will not be chargeable with liability upon a contract made by its promoters, or by agents appointed by them, prior to the time of its coming into being, even though the contract be made in its name, and with the understanding that it would perform the same. Fletcher Cyc. Corporations, Section 205, at

792 (perm. ed.) Two exceptions are made to this rule: (1) corporate liability may be imposed by its articles of incorporation or by a statute which regulates corporate liability in such matters, and (2) liability may be assumed by the corporation by some act after it is in being (ratification). Air Traffic & Service Corp. v. Fay, 90 U.S. App.D.C. 319, 196 F.2d 40 (1952); Fletcher Cyc. Corporations, supra at 794.

Insofar as attorney's services in forming a corporation are concerned, however, we are impressed by the reasoning in David v. Southern Import Wine Co., 171 So. 180, 182 (La.Ct.App.1936):

"(After citing the general rule above) But that rule is not applicable where the service is limited to that which immediately precedes, or is, in effect, contemporary with, actual incorporation, and where the actual incorporation is, in effect, ratified and approved later by the acceptance by the corporation of the benefits which have flowed to it from those services. A corporation brought into existence—given its life—by the service of an attorney, may not be heard to say that the service was unauthorized because rendered prior to incorporation. When the benefit of such service is received and accepted by the corporation, it cannot be heard to question the authority through which the service was employed. It may be that in such case the corporation may not be held to the express terms of a contract for such employment; in other words, it may not be held to the contract itself, but it may not repudiate the service entirely and yet reap the benefits therefrom. It may repudiate the contract price if a price has been agreed upon, but it may not refuse to pay for the service on the basis of the value of the benefits received; in other words, on a quantum meruit."

We adopt this as the rule in Arizona.

■■■■ The parties having agreed that the stock option was granted to Plaintiff in lieu of his compensation in forming the Defendant corporation, we find adequate consideration flowing to the corporation to support the granting of the stock option in the first instance. However, whether or not the value of the stock option exceeds the value of the services rendered and therefore may be unfair to the corporation, is a question of fact for the trial court upon the hearing of testimony and the receiving of evidence.

*Constitutional Provision*: Appellees next contend that the stock option, having been granted without consideration, is in violation of Article XIV, Section 6, of the Arizona Constitution, which reads as follows:

"No corporation shall issue stock, except to bona fide subscribers therefor or their assignees; nor shall any corporation issue any bond, or other obligation, for the payment of money, except for money or property received or for labor done. The stock of corporations shall not be increased, except in pursuance of a general law, nor shall any law authorize the increase of stock of any corporation without the consent of the person or persons holding the larger amount in value of the stock of such corporation, nor without due notice of the proposed increase having been given as may be prescribed by law. All fictitious increase of stock or indebtedness shall be void."

Having found that consideration exists for the granting of the stock option to Plaintiff, we need not determine whether the issuance of stock without consideration is in violation of this Constitutional provision. (Cf. Overlock v. Jerome-Portland Copper Mining Co., 29 Ariz. 560, 243 P. 400 (1926) (special concurring opinion).)

The trial court's granting of Defendants' motion for summary judgment is in error as to Count I because of the existence of material facts which are in dispute. The trial court's ruling on this count is reversed.

## BREACH OF CONTRACT

That portion of Count II of Plaintiff's complaint which is in issue here alleged the breach of Plaintiff's employment contracts

as an attorney for defendant corporation and as assistant secretary to the corporation.

■■■ *Attorney Contract*: Plaintiff bases his contract of employment as an attorney for the corporation upon the "pre-incorporation agreement". An action for a breach of this agreement will not lie for several reasons—among them, lack of mutuality and vagueness. We need not reach all of these grounds, for this is not an agreement of the corporation, but of the incorporators, entered into prior to the formation of the corporation. As we have previously indicated, contracts or agreements of promoters or incorporators are not binding on the corporation unless ratified by it. There is no showing that such a ratification occurred as to future services to be rendered by Plaintiff as an attorney. The fact that Plaintiff performed services as an attorney for the corporation for a period of twenty months after the corporation was formed is not sufficient ratification to show these services were to be performed indefinitely in the future. The ruling of the trial court granting summary judgment as to this portion of Plaintiff's complaint was correct.

■■■ *Assistant Secretary Contract*: The contract of employment of Plaintiff as assistant secretary is attacked on two separate grounds—lack of consideration and the resolution declaring the employment being void by reason of Plaintiff's status as a Director voting on his own contract. We have previously discussed the law applicable to the latter contention and suffice it to say here, the employment agreement is not void, per se, but is voidable, depending upon whether it is fair to the corporation. This is a question of fact to be determined by the trial court.

Directing our attention to the lack of consideration argument, it appears that the agreement itself provides that no specific services are required of Plaintiff. This in and of itself would not void the agreement for lack of consideration, if, in fact, the parties contemplated general services to be furnished, the specific nature of which being left to the inherent nature of the office.

We note from the depositions on file in this action that the corporation's present legal counsel holds the same office of assistant secretary as Plaintiff previously held, and which is now being attacked as having no duties. If the need for an assistant secretary exists under the present management of defendant corporation, we cannot say, as a matter of law, that that need did not exist under the prior management.

It appears that the sword used by the trial court to strike down Count I of Plaintiff's complaint, i. e., personal interest of the director, was also used to strike down this portion of Plaintiff's complaint. The court's ruling as to Plaintiff's employment as assistant secretary of the corporation, is reversed with directions to the trial court to determine whether or not the contract of employment of Plaintiff as assistant secretary was fair to the Corporation.

## PERSONAL LIABILITY OF CORPORATE DIRECTORS

Count III of Plaintiff's complaint was an action for wrongful interference with contractual relations. The claim was asserted against the individual directors and personal liability sought to be imposed. The three contracts involved are the stock option to Plaintiff, his attorney contract, and his assistant secretary contract.

The individual defendants contend that they were at all times acting as directors of the corporation within the scope of their authority and as such directors are not personally liable for acts of the corporation. It is well settled in Arizona that an individual is liable in tort for intentionally inducing another person to breach a contract where such inducement is without legal justification or excuse. Meason v. Ralston Purina Co., 56 Ariz. 291, 107 P.2d 224 (1940); Tipton v. Burson, 73 Ariz. 144, 238 P.2d 1098 (1951). The Plaintiff contends that the same individual·liability that is imposed by law in the cases above cited,

should also apply to corporate directors acting in their capacity as such directors. We are called upon here to determine whether this liability can be imposed.

 The majority and better rule is that this liability follows to corporate directors, with one important proviso. Because of public policy, a director should be allowed to advance and protect legitimate interests of his corporation, its stockholders and creditors by discharging his corporate duties unhampered by the fear of personal tort liability. May v. Santa Fe Trail Transp. Co., 189 Kan. 419, 370 P.2d 390 (1962). Therefore, the acts of such directors should be privileged provided that the acts complained of were in good faith and the director believed that his acts were for the best lawful interests of the corporation. Collins v. Vickter Manor, Inc., 47 Cal.2d 875, 306 P.2d 783 (1957); Fletcher Cyc., Corporations, Section 1001 (perm. ed.)

The question of good faith and whether the director believed the act was for the best lawful interests of the corporation must be determined as of the time the inducement took place. To determine these questions it is proper for the trier of facts to ascertain whether the accused director acted to satisfy personal feelings against the third party, or to serve his own private interest with no benefit to the corporation. See Republic of Italy v. DeAngelis, 206 F.2d 121, 129–132 (2d Cir.1953) (concurring opinion) for an excellent analysis of the cause of action.

We find that Count III of Plaintiff's complaint states a cause of action for individual corporate director liability. However, when mere statements in a pleading are attacked by a motion for summary judgment supported by proof of specific facts an obligation devolves on the plaintiff to present something that will show, at the time of trial, that he has some proof to support the allegations of his pleadings. Perez v. Tomberlin, 86 Ariz. 66, 340 P.2d 982 (1959).

We have read the pleadings, memoranda, affidavits and depositions in this matter and find that Plaintiff has not raised sufficient facts or inferences to indicate that any of the directors were motivated other than by good faith in the belief that they were acting for the best interests of the corporation.

The court's judgment as to Count III is affirmed. The court's judgment as to Count I and II, except that portion thereof dealing with Plaintiff's contract as an attorney, is reversed and remanded to the trial court to determine whether the stock option and the employment contract as assistant secretary were fair to the corporation at the time entered into.

HAIRE and DONOFRIO, JJ., concur.